## HORN v. STATE.   (No. 6201.)

(Court of Criminal Appeals of Texas.   April 27, 1921.   Rehearing Denied May 25, 1921.)

1. **Robbery** 🔑24(5)—**Evidence held sufficient to warrant conviction of robbery by putting in fear.**

Evidence *held* to warrant a conviction of robbery by putting in fear of life or bodily injury, notwithstanding defendant, who with his confederate was masked, did not display firearms, or in any wise injure the party robbed.

2. **Criminal law** 🔑772(6)—**All defenses raised should be affirmatively submitted.**

All defenses clearly raised should be affirmatively submitted.

3. **Robbery** 🔑27(6)—**Charge that if defendant took property, but did not put owner in fear, he should be acquitted, properly refused.**

In a prosecution for robbery, where the court told the jury that they must find that defendant, who admitted taking property from prosecuting witness, put him in fear of life or bodily injury, and if they had a reasonable doubt they should acquit, the refusal of requested charge that, if defendant took the property, but did not put the witness in fear of life or bodily injury, they should acquit, *held* proper; the issue not being raised by the evidence.

4. **Criminal law** 🔑834(3)—**Modification of requested charge held proper.**

In a prosecution for robbery where the evidence tended to show that defendant put the owner of the stolen property in fear, and that the owner delivered the property to him, it was proper to add to a requested special charge that if the property was taken with the consent of the owner the jury should acquit, that if the owner would not have delivered except that he was placed in fear, the taking would be without his consent.

Appeal from Criminal District Court, Dallas County; Robert B. Seay, Judge.

J. A. Horn was convicted of robbery, and he appeals. Affirmed.

🔑For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Baskett & De Lee, of Dallas, for appellant.
R. H. Hamilton, Asst. Atty. Gen., for the State.

HAWKINS, J. Appellant was indicted for robbery in two counts: The first charging that the robbery was effected by making an assault upon R. C. Cloninger, and by said assault, and by violence to his person, and by putting him in fear of life and bodily injury; the second count charged robbery by the use of firearms. The indictment also contained a count charging theft. In submitting the case to the jury the trial judge withdrew the counts for theft, and robbery with firearms, and eliminated all the elements of robbery in the first count save that charging a "putting in fear of life or bodily injury." A conviction, with penalty of six years in the penitentiary, resulted.

[1] Appellant insists that the evidence is insufficient to show that Cloninger, the party robbed, was put in fear of life or bodily injury, and urges error on the part of the trial court in refusing to give his special charge directing a verdict of not guilty. On the night the alleged robbery occurred, Mr. Cloninger and a young lady had driven in his car out in the country a few miles from Dallas, and had stopped by the side of the road to eat some ice cream they had taken with them. Appellant and his confederate appeared suddenly out of the brush, one on either side of the car, both being masked. The young lady's purse was lying on the front seat, and they proceeded first to take some $10 or $15 from this. Cloninger says he was ordered out of the car by appellant, who took from him his watch, some money, and a diamond stud from his tie. The young lady did not see any pistol in the possession of either man, but Cloninger claims that both had pistols in their coat pockets, and that he saw the handles of the pistols, and that the men kept one hand on the pistols, although they were never drawn from their pockets. There is no question about the money, watch, and diamond being taken. Appellant admits it in a written confession. He says he and Warren had agreed to go out on the road, and "stick" somebody up. Why did Cloninger give up his property, including a thousand dollar diamond? Was it because he liked appellant and Warren, and wanted to display his generosity? He did not know them; they were masked. Or was it because of their appearance under the circumstances, and their conduct after they got on the scene? We quote from Cloninger's testimony as found in the statement of facts:

"This property was taken from my possession. I handed it over to them: I did it without my consent. It certainly was without my will. The reason I gave it to them was I didn't want to be beat up, or didn't want to be shot or anything. I didn't want to have any trouble with them whatever. They had guns in their pockets. * * * I wasn't to say scared; the reason I did not resist them was because I didn't want to have any trouble with them. I was afraid if I did resist them I would be injured."

As we understand appellant's contention, it is based on the isolated expression, "I wasn't to say scared." We do not think this language, taken in connection with the entire testimony as we find it in the record, is susceptible of the construction sought to be placed upon it by counsel for appellant. Where the indictment alleges the robbery to have been effected by fear of life or bodily injury, the burden is of course on the state to prove it; but "fear" in this connection does not mean a panic of fright to the extent of losing one's senses or control. The party robbed may not be "scared" to the extent that he is hysterical. If he feels that if he complies with the request of the robber to surrender his property, there is no danger imminent to him, in a sense he might not be scared; yet, if under the circumstances and conditions surrounding the transaction he has a reasonable belief that he may suffer injury unless he does comply with the robber's request, the "fear" required by the law is present. There is no question that such feeling existed in the mind of Cloninger. There was no mistaking the purpose of the masked men. The exercise of the slightest judgment would dictate the very course pursued by the victim in this case, the surrender of his property promptly because of a fear that resistance, or declining to comply with the robbers' demand, would result in probable injury. It follows from what has been said that we discover no error in the court refusing to give the peremptory instruction to return a verdict of not guilty.

[2, 3] Appellant also requested an affirmative charge, to the effect that if appellant took the property from Cloninger, yet if in doing so he did not put him in fear of life or bodily injury, the jury would acquit. This charge was refused, and error assigned thereto. We accede to the rule that all defenses fairly raised by the evidence should be affirmatively submitted to the jury. The court had already told the jury they must find from the evidence beyond a reasonable doubt that appellant did put Cloninger in fear, etc., before they could convict him, and that if they had a reasonable doubt of his guilt to acquit. We apprehend the learned trial judge, in refusing the special charge, must have done so on the ground that, fairly construed, the entire evidence did not raise the issue in such a way as to require the af-

firmative submission of the charge in question.

We are inclined to agree with the trial court. What has already been said sufficiently expresses our views. By no reasonable construction can it be urged that the victim gave up his property for any reason other than through a prudential fear that refusal to do so would bring on trouble and probable injury; and we do not believe the issue as presented in the requested charge was sufficiently raised by the evidence to require its submission.

[4] Appellant requested a special charge to the effect that if the property was taken with the consent and with the will of Cloninger, the jury should acquit. The court gave the charge, but supplemented it with the following:

"This charge is given with this further statement that if the defendant at the time by his conduct, acts, and words caused R. C. Cloninger to apprehend and fear that he would be killed or suffer bodily injury at the hands of defendant, if he did not deliver his said property to the defendant, and the conduct, acts, and words of the defendant were reasonably calculated to create such apprehension and fear on the part of the said R. C. Cloninger, and because of such apprehension and fear, if any, he delivered said diamond stud to the defendant, and would not have done so except for such fear and apprehension, then this in law would be a taking without the consent and against the will of the said Cloninger."

Some of the evidence was to the effect that appellant took the diamond stud out of Cloninger's tie, and other to the effect that Cloninger himself removed it from the tie and handed it to appellant. To have given the requested charge without an explanation to the jury of what in law was meant by "with consent" and "with the will" would have been manifestly unfair to the state. In the absence of the explanation, the jury may have concluded that if Cloninger handed the diamond to appellant it was delivered with his consent and will, regardless of the impelling cause.

No brief is on file for appellant, and the matters we have discussed are the questions stressed in oral argument by counsel. However, we have examined the other propositions raised, and find no errors requiring a reversal.

The judgment is affirmed.

### On Motion for Rehearing.

MORROW, P. J. No fact, reason, or authority is pointed out which was not considered in the original hearing.

A review of the record leaves us of the opinion that a proper disposition of the case has been made, and the motion is overruled.