(No. 2077.)

## GENARO SERIO *v.* THE STATE.

1. RAPE—CHARGE OF THE COURT.—The indictment in this case contained two counts, the first of which charged the rape of a child under the age of ten years, and the second the rape of a woman by force, threats and fraud. *Held* that, the State having entered a *nolle prosequi* as to the first count, it was no longer an issue in the case, and, therefore, the trial court, by charging the law of such a rape, committed a fatal error.

2. SAME.—The "case" to which the statute requires the charge of the court to apply means the case as made by the evidence. If, then, the evidence shows the rape to have been committed by one or two of the several means, viz: force, threats or fraud, but not by all three of those means, it is error to charge the jury upon all three of the said means. In other words, though the indictment charged the three means, the charge should be confined to the means only that was proved by the evidence. See the opinion for instructions of the court *held* erroneous in the particulars indicated. Note also that the charge upon the subject of penetration, while correct in the abstract, is misleading, and, therefore, incorrect in its application to the case.

APPEAL from the District Court of Cameron. Tried below before the Hon. J. C. Russell.

The conviction in this case was for the rape of Concepcion, alias "Chona" Olivera, in Cameron county, Texas, on the tenth day of August, 1886. The death penalty was assessed against the appellant.

The prosecutrix, Concepcion Olivera, was the first witness introduced by the State. She testified that her name was Concepcion Olivera, but was generally called "Chona," which was a common pet or nick name for Concepcion. She was the daughter of Estefana Olivera, who was the wife of the defendant, who was witness's step father. The witness could neither read nor write, and did not know her age. At present, the witness was living with her mother on the San Pedro ranch. She lived with the defendant and her mother on the Acedon ranch when the outrage was perpetrated upon her. On that day she, the defendant and her mother went into the corn field to gather roasting ears. Her mother soon returned to the house, leaving witness and defendant alone in the corn patch. As soon as witness's mother was out of sight, the defendant threw the witness down and had forcible carnal knowledge of the witness, completely penetrating her sexual organ with his male member. Witness did not consent to this carnal act. Defendant then mounted his horse and rode off in the direction of the river. Witness bled a great deal from the effect of the forcible penetration of her sexual organ. She went home as soon as defendant released her, and told her mother what the defendant had done.

Cross examined, the witness said that the outrage was perpetrated upon her at a point in the field about three hundred yards from the house. No one was present. Don Juan Esteban Flores lived on the Acedon ranch. Witness told no one about this matter except her mother. She did not tell her mother that the perpetrator of the outrage was a strange man, whom she did not know by sight or name. On the contrary, she told her mother positively that the defendant was her ravisher.

Don Juan Esteban Flores was the next witness for the State. He testified that he lived at the Acedon ranch, in Cameron county, Texas. He heard of this outrage on Chona Olivera about the last of June, 1886. Returning to his home from the woods, one day, his attention was attracted to the defendant's house by the weeping and wailing of Chona's mother. He went to the house and learned what had happened. Defendant was not then at home, nor did the witness ever see him on the ranch afterwards. A few days later, defendant's family left the ranch, and never afterwards returned. The Cotio ranch was about five miles distant from the Acedon ranch. Witness did not know the age of the girl Chona, but had heard from her relatives that she was nine years old at the time of this offense.

Merced Cavazos testified, for the State, that he lived about four miles from the Acedon ranch. Witness owned the Acedon ranch, the whole of which was in Cameron county. Witness was sent for, as the owner of the ranch, to investigate the alleged outrage, and arrived a short time after it was said to have occurred. He was then told about the affair. Defendant was not then on the place, and was never afterwards on the place, so far as the witness knew.

Doctor Wolf testified, for the State, that, at the instance of the State's attorney, he examined the person of the girl Chona. He made the examination on the day of this trial. Her virginity had certainly been destroyed, so far as could be indicated by the absence of the hymen. The hymen had been ruptured for some little time and the vagina was flabby. Witness was unable to tell, after so long a lapse of time, whether the hymen was ruptured by a male member or some other elongated instrument. The State closed.

Estefana Olivera, the wife of the defendant and the mother of Chona, testified, for the defense, in substance, that, on the day of the alleged outrage, she, her husband and Chona went from their house on the Acedon ranch to the prairie to gather bones. About an hour later defendant left witness and Chona gathering bones and went to the Cotio ranch, four or five miles distant, to get some provisions. A while later witness went home to nurse her baby. Still later Chona came home and said that she had been raped by a strange man whom she had never seen before. Chona's parts were bleeding profusely and her clothes were bloody and soiled. Witness then, with a mother's natural impulse, began to weep, and was sooned joined at her house by Don Juan Esteban Flores. She then prevailed upon Porfirio Flores, Don Juan's son, to go to the Cotio ranch for her husband, the defendant. Porfirio went and returned with defendant. On defendant's arrival witness made him take off his clothes, which she examined. She did this purely to satisfy herself that he was not the guilty party. His clothes and person were perfectly clean. Chona always told witness that she was raped by a strange man. Two or three days later, Cavazos, objecting to witness and defendant remaining on the Acedon ranch, they moved to the Olmitos ranch and thence to the San Pedro ranch, where they lived until defendant's arrest.

On her cross examination the witness said that she did not examine her husband's clothes and person because Chona ac-

cused him—which she did not do—but to satisfy herself. Witness declared that she did not tell Don Juan Esteban Flores that Chona accused the defendant of raping her. The witness produced the certificate of Chona's birth and baptism, which established her age to be a few weeks more than eleven years.

Don Juan Esteban Flores testified, for the State in rebuttal, that when he reached the defendant's house, just after the alleged rape, Estefana Olivera, defendant's wife, told him that Chona had been recently raped, and that she accused the defendant of being her ravisher.

Porfirio Flores denied that Estefana Olivera requested him to go to the Cotio ranch for the defendant. He did not go to that ranch for the defendant, nor did he go to Estefana's house with the defendant, after the alleged rape.

The motion for new trial raised the questions discussed in the opinion.

No brief for appellant.

J. H. Burts, Assistant Attorney General, for the State.

HURT, JUDGE. This is a conviction for rape, with the death penalty assessed. The indictment contains two counts:

I. That defendant had carnal knowledge of a female under the age of ten years.

II. That the said Genaro Serio did feloniously and unlawfully make an assault in and upon said Concepcion, alias "Chona," Olivera, and did then and there, by means of said assault, and by force, threats and fraud, and without the consent of the said Concepcion Olivera, alias "Chona" Olivera, then and there rape and ravish, and have carnal knowledge of, the said Concepcion Olivera, alias "Chona" Olivera, she, the said Concepcion, alias "Chona" Olivera, being then and there a woman.

Upon the trial a *nolle prosequi* was entered upon the first count, and hence the appellant was tried alone upon the second count.

The record furnishes not the slightest fact or circumstance tending to show that the rape was accomplished by *threats* or *fraud*. The court, however, charged the jury as follows:

I. "You are instructed that rape is the carnal knowledge of a woman, without her consent, obtained by force, threats or fraud, or the carnal knowledge of a female under the age of

ten years, with or without consent, and with or without the use of force, threats or fraud."

\* \* \* \* \* \* \* \* \* \* \* \* \*

"III. The threats must be such as might reasonably create a just fear of death, or great bodily harm, in view of the relative condition of the parties, as to health, strength, and all other circumstances of the case.

"IV. The fraud must consist in the use of some stratagem by which the woman is induced to believe that the offender is her husband, or in administering without her knowledge or consent some substance producing unnatural sexual desire, or such stupor as prevents or weakens resistance, and committing the offense while she is under the influence of such substance. It is a presumption of law, which can not be rebutted by testimony, that no consent was given, under the circumstances in this paragraph of the charge."

Appellant at the time excepted to the whole charge, first, upon the grounds that it did not contain the law of the case; and, second, that it was calculated to mislead and confuse the jury. That part of the charge relating to rape upon a female under the age of ten years was indirectly, if not directly, called to the attention of the court. This appears from the exception reserved at the time.

It is the duty of the court to submit to the jury, by proper instructions, the law applicable to the very case. What, therefore, is this case? It is that charged in the indictment and supported by evidence. The appellant was tried upon the second count, the first count having been eliminated by a *nolle prosequi*, so far as the trial was concerned. The appellant being tried upon the second count alone, the State must be held to show that the carnal knowledge was obtained by force, threats or fraud; and this even though the proof might show that the female, at the time of the commission of the offense, was under the age of ten years. This is evident, for with the elimination of the first count disappears from the indictment every allegation that the female was under the age of ten years. It follows, therefore, that the portion of the charge relating to rape upon a female under the age of ten years was not the law applicable to the case upon trial.

Again: The case, as below stated, is that which is properly alleged, and which is supported by evidence. The second count alleges a rape by force, threats and fraud. If, therefore, the

State could show that the carnal knowledge was had by either of the means alleged, alone, or by the first two (to wit: force and threats) combined, a conviction would be proper, since all these means are charged. If the evidence tended to show a rape consummated by force and threats, it would become the duty of the trial judge to submit to the jury the law applicable to both phases of the case. Similarly with regard to rape by fraud. But notwithstanding all the means contained in the code are charged, viz: force, threats and fraud, still the case would be that which has evidence to support it, and to the case as made the charge should be confined.

In the case under consideration there is no evidence tending to support a rape by threats or fraud; hence the charge should have been restricted to a case in which force alone was used. The court should have treated the case just as though the indictment contained no allegation of threats or fraud; thus pointedly directing the minds of the jury to the case made by the testimony.

Again: The whole charge being excepted to, because being calculated to mislead and confuse the jury, we must look to all its parts to determine whether or not the exceptions were well taken. Looking, then, to the charge as a whole, our attention is drawn to the following: "Penetration only is necessary to be found upon a trial for rape." The proposition is correct, if presented to the jury in such a manner as not to mislead. As presented in the charge complained of, it may have had the effect to induce the jury to believe that all that was necessary upon a trial for rape was to prove the fact of penetration. The jury should have been instructed that, to have carnal knowledge of the woman it was not required to prove an emission; that, if the evidence showed a penetration of the male parts of the defendant into the female parts of the woman, this would be sufficient. We are not attempting to give a precedent for a charge upon this offense, but we are endeavoring to show that the charge as given, being unconnected with the subject of sexual intercourse between the parties, may have misled the jury to the injury of the appellant.

We are of the opinion that the court erred in referring to rape upon a female under the age of ten years; in the charge relating to a rape committed by threats; in the charge which relates to a rape by fraud, and in the charge upon the subject of penetration. The second and third errors were not made in de-

fining the offense of rape simply, but were carried into that part of the charge (the fifth paragraph) which seeks to make a direct application of the law to the facts of the case.

This being the case, we are of opinion that, taking the charge as a whole, the errors therein contained were calculated to injure the rights of the defendant.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*