FELIX LEWIS V. STATE.

No. 24571. January 18, 1950.
Rehearing Denied March 1, 1950.

*C. C. Triplett,* George West, and *Lyman, Pittman, Pogue & Schraub,* Corpus Christi, for appellant.

*John H. Miller,* District Attorney, Sinton, *R. E. Schneider,*

Jr., County Attorney, George West, and *George P. Blackburn,* State's Attorneye, Austin, for the state.

GRAVES, Judge.

Appellant was charged with rape upon one, Margaret Mozelle Lewis, by force, threats and fraud, and upon his conviction, was assessed the penalty of death by the jury.

The testimony shows that this girl was the child of appellant and was sixteen years of age. The indictment contained two counts: the first charging rape of a woman by force, threats and fraud; and the second count, rape upon a female under the age of eighteen years and not the wife of the appellant.

The trial court submitted only the first count to the jury, although the charge in its second paragraph thereof did set forth the definition of rape as provided in the Penal Code, Art. 1183, as follows:

"Rape is the carnal knowledge of a woman without her consent obtained by force, threats or fraud; * * * or the carnal knowledge of a female under the age of eighteen years other than the wife of the person with or without her consent and with or without the use of force, threats or fraud."

Much complaint is made in the objections to the court's charge relative to the inclusion in such definition of the portion relating to rape of a female under the age of eighteen years. It is correctly asserted that the election of the trial judge to charge alone upon rape by force was an abandonment of the count charging rape under the age of consent, and the record shows that such cause was submitted to the jury on force alone as charged in the first count. Appellant says that the inclusion of rape under the age of consent in the preliminary definition thereof led the jury to believe that they could convict upon either count, and gave them the privilege of considering both counts, same having been set forth in the charge as constituting the crime of rape. It is found, however, that in the charge, wherein the law was applied to the facts, the jury were told that in this case the indictment charged a rape by force, and a definition of such force was then given and no mention of a rape under the age of consent was mentioned therein. This was but a casual mention in such preliminary definition of rape, and thereafter, the court made it plain that such rape should be proven by force alone. We are cited to the case of Serio v. State, 22 Tex. App. 633, 3 S. W. 784, which we do not find to

be in point. In that case a *nolle prosequi* had been entered as to the first count charging a rape upon a ten-year-old child, leaving, as in this present case, a count charging a rape by force, threats and fraud upon a woman against her consent. The trial court charged upon both counts connected together, that is, the rape of a female under the age of consent, or the rape of a woman against her consent, etc., allowing a conviction under either count of such indictment.

This record shows that the under age of consent count was not submitted to the jury, and we think its cursory mention could not have confused nor misled this jury. Such a mere statement relative to rape under the age of consent, standing alone, is not error. See Salazar v. State, 55 Tex. Cr. R. 307, 116 S. W. 819; Fite v. State, 139 Tex. Cr. R. 392, 140 S. W. (2d) 848; Calyon v. State, 76 Tex. Cr. R. 83, 174 S. W. 591.

Appellant next complains relative to a failure of the trial court to give to the jury certain specially requested charges concerning the amount and character of resistance offered by the prosecutrix to her father's advances and efforts to accomplish the acts charged herein. These matters, while possibly not shown to have been properly called to the trial court's attention, will, nevertheless, be considered under the general proposition as to whether or not the girl gave her consent to her father's unnatural acts. Of course, under the charge presented by the court, it became the duty of this girl to resist her father's advances and to thus use all the force in her power, taking into consideration the previous relationship between the parties and the surrounding circumstances at the time; and the accused must have used such force as was necessary, such as might reasonably be supposed to overcome all resistance, taking into consideration the relative strength of the parties and other circumstances of the case. See Art. 1184, Vernon's Ann. Tex. P. C., Vol. 2, p. 859, and cases cited thereunder.

Relative to the force used and the resistance offered, we quote from the testimony of the girl as found in the record and summarized in the state's supplemental brief as follows:

"Prosecutrix is a girl of a little over 16 years of age, and is the daughter of Appellant. She weighed about 130 pounds and he weighed about 240 pounds; and that he is one of the most powerful men in Live Oak County. That on or about the 18th day of May, 1949, prosecutrix had gone to a picture show with one John Cherry, returning to her home, the telephone office, which was about a block from the picture show, about

10:30 that night. That her father, the Appellant, met her when she came in. That he called her a son of a bitch, a little rat, and a good for nothing. That he pulled her hair, slapped her face two or three times, knocked her down twice, and kicked her on the knee two or three times. That she still had a scar on her knee and that her knee was still sore and blue. That he made her get into his car to go find John Cherry, drove to a barbecue stand and got a Coke; that he turned off Highway No. 281 and finally drove on the Clegg road where they became stuck in the sand. That Burrell and his son helped them out of the sand and they drove out to the Burns ranch. That after arriving in the Burns pasture he made her take a drink, telling her that if she didn't he would slap the side of her head off. He then made her get out of the car, by pushing her out, and told her to take off her clothes, threatening to knock her down and 'slap her face off' if she didn't take them off and that he would tear them off. That after taking her clothes off she stood there crying, afraid to run because she knew she couldn't get away, and begging him to let her alone. That he then opened the door of the car, grabbed her by the shoulders and shoved her inside the car and on the seat, got in and sat down beside her, kissing and fondling her and made her take another drink of whiskey. She continued crying and asking him to leave her alone; he then pushed her down on the seat, held her down by her shoulders, held her legs down, pulled her hair, overpowered her and raped her. During all of which time she was kicking him with her feet and 'doing everything I could to get him off of me.' She further testified, 'I did everything I possibly could to keep my father from having intercourse with me that night. I kicked him, slapped him, pulled his hair, and abused him and shamed him and begged him to leave me alone. He held me down by my shoulders and got on top of me, and I was just played out and couldn't do anything more after he got me down and got on top of me. I weigh about 130 pounds, and my father weighs about 240 pounds and is a powerfully built man.' "

We suggest that the circumstances surrounding the parties, she being the child of the father, reared by him, and under his tutelage and guidance, might call for a different degree of resistance than if the accused were a stranger, and naturally would have weakened her power to fight back at him who had the custody and control of his own child. Suffice it to say, that we are impressed with the idea that her resistance to his force was actual and not feigned.

Bill of Exceptions No. 1 claims that the trial court com-

mitted error in allowing the state to prove by the girl, Margaret Mozelle Lewis, that she did not give her consent to her father having intercourse with her at the time alleged in the indictment on the ground that said question was a mixed question of law and fact. We think the witness should have been allowed to say whether or not she gave her consent to this unnatural act of her father regardless of the objection. She could certainly answer as to whether or not she gave her consent. This matter could have been, and doubtless was, attacked by appellant's attorneys, but the matter of lack of consent being pleaded, it could be proven.

Bill No. 2 complains because of the fact that the state was permitted to prove, over appellant's objection, that the girl told her mother of the matter complained about herein as soon as she saw her mother the next morning. The girl was not returned home until about 5:00 o'clock in the morning after having been out with her father practically all night, and as soon as she awakened, she saw her mother and told her about this occurrence. No details were shown, but merely an outcry or complaint made, and we think same was admissible as such outcry.

Bill No. 3 complains because after appellant had placed his wife, Naomi Lewis, on the stand and had shown by her testimony that subsequent to May 18, 1949, the date shown in the indictment as the date when the offense charged therein is alleged to have occurred, and prior to the date the defendant was arrested on the complaint charging said offense, she had urged him to leave home, which inquiry she answered in the affirmative. Whereupon, on cross-examination of this witness by the state, she was asked why she asked her husband to leave home, to which she replied, "Because I knew he had been having intercourse with my daughter." This answer was objected to because it did not involve an answer as to anything the appellant's attorney had asked the witness; the reason for asking him to leave home had not been gone into by appellant, and this answer was not proper in rebuttal or on cross-examination. We express the opinion that when appellant had shown that his wife had urged him to leave home, the reason for such urging became a material matter of cross-examination, and we see no error in her being caused to say why she had thus urged him. A part of this transaction was gone into by one party, and we think the opposing party could go into the remaining portion thereof. See Art. 714, note 10, Vernon's Ann. Tex. C. C. P.,

Vol. 2; also Art. 728, in same volume, and authorities there cited thereunder.

We find no error shown in the record, and the judgment will therefore be affirmed.

ON APPELLANT'S MOTION FOR A REHEARING.

BEAUCHAMP, Judge.

In his very well prepared brief and able oral argument, appellant contends that we erred in the original opinion in not reversing this case: First, because the court included in his charge a definition of rape of a female under eighteen years of age. Second, because the court failed to give certain special requested charges, which were discussed fully in the original opinion.

We have carefully reviewed this motion in the light of the argument presented and remain of the opinion that no error was shown. Even though new argument and additional authorities have been considered by us, as a result of this motion, we think the original opinion is correct and presents our reasoning as effectively as we could by writing more at length.

It might not be amiss to observe that the amount of resistance required differs under different circumstances. An adult female person would naturally present more resistance, if acting in good faith, than a child would. A woman whose physical strength equals or is greater than the strength of her attacker would be expected to use that strength. What might appear to be a feigned resistance on her part would be more than a child would be capable of making, under circumustances like those before us in this case. It is measured as much by the judgment one is capable of exercising as by physical strength. Then too, a child may naturally be expected to exercise less resistance to the demands of her father than to some other person.

Considering all of the facts of the case, the appellant's defense was sufficiently placed before the jury by the court's charge and we fail still to find any reversible error in the case.

The motion for rehearing is overruled.

Hawkins, P. J., absent.