**Eddy Corpus ZAMORA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 42362.**

Court of Criminal Appeals of Texas.

Dec. 3, 1969.

**44**

———◆———

Bill R. Jones, Mesquite, for appellant.

Henry Wade, Dist. Atty., John B. Tolle, Camille Elliott, and James P. Finstrom, Asst. Dist. Attys., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

The offense is rape; the punishment, 12 years' confinement in the Texas Department of Corrections.

The indictment, in its first count, charged the offense of statutory rape. The second count charged rape by force, threats and fraud. It is not clear from the record when the State waived or abandoned the first count of the indictment or elected to stand on the second count, but the court's charge withdrew the first count from the jury's consideration and the offense of statutory rape passed out of the case. See Lewis v. State, 154 Tex.Cr.R. 329, 226 S.W.2d 861.

In his first ground of error appellant claims the evidence is insufficient to support the jury's verdict of rape by force and threats.

The record reflects that on March 2, 1968, between 9 a. m. and noon, the 16 year old prosecutrix, a high school student, her 9 year old sister, Betty, and the appellant, the prosecutrix's stepfather,[1] were alone in

their home in the city of Dallas. The prosecutrix's mother and other members of the family had gone to a grocery store.

According to the prosecutrix's testimony, the appellant requested she bring him some coffee and that when she did he was sitting on a bed in his bedroom; that he asked her to sit on the bed beside him and when he asked the second time she did;[2] that he put his arm around her and kissed her and requested her to remove her clothes; that she knew what was going to happen; that though she did not want to she stood up and took off her skirt and half slip and laid on the bed; that when she did not take off her panties at appellant's request he removed them. The prosecutrix then related appellant removed his clothes and had sexual intercourse with her. She testified that though she was not crying at the time she experienced pain during the intercourse and started to cry but the appellant "told" her "not to."

The record on direct examination of the prosecutrix reflects the following:

"Q. Did he ever threaten you in any way concerning this act or telling anybody about this act?

"A. He said that if I told my mother, that he was going to tell her to put me in the juvenile home.

"Q. All right, did he threaten you in any other way besides placing you in the juvenile home?

"A. He told me that if I didn't do what he told me to do, that he would whip my younger sisters and brother for no reason.

"Q. Now, Delia, had he ever made some threats to you prior to this act?

"A. No sir.

---

1. The record reflects that at the time of the alleged offense the prosecutrix was unaware that the appellant was her stepfather. He and her mother had married when the prosecutrix was approximately one year old.

2. The record reflects:
"Q. Did he *ask* you or did he *direct* you?

"A. He asked me."

"Q. He had never threatened to put you in the juvenile home before?

"A. No sir.

"Q. Had he ever threatened to whip your brother and little sisters if you didn't do what he wanted you to do before this time?

"A. Before this time?

"Q. Yes.

"A. No sir.

"Q. Now, when he made these threats to you, did you believe him?

"A. Yes sir.

"Q. Now, when your mother got back from shopping, did you tell her about what had happened or did you not?

"A. I did not tell her."

On cross-examination the prosecutrix admitted she had had sexual relations with the appellant since she was ten years old, which apparently had never been reported.

She did testify several times that at the time of the alleged offense she was "afraid of" or "scared" of appellant; that he had "whipped" her approximately three times in her whole "lifetime."

Direct examination reflects the following:

"Q. Let me ask you this question: After you gave him the cup of coffee, did you leave the room?

"A. No sir.

"Q. Did you try to leave the room?

"A. No sir.

"Q. Did you start to leave?

"A. No sir.

"Q. What did you do?

"A. I stayed there in case he needed something else."

\* \* \* \* \* \*

"Q. Now, on the date of the 2nd of March, 1968, when you told this jury that this happened, while your mother was at the store when your brother and two sisters were with her, were you afraid of him at that time?

"A. I was scared.

"Q. When you took that cup of coffee in his room as he told Betty to have you do, when you waited there instead of just leaving, is that because you were afraid of him?

"A. No sir."

Betty, the prosecutrix's half-sister, testified that on the date in question she had occasion to peek under the doorway curtain at the entrance to appellant's bedroom and saw appellant on top of the prosecutrix. She related that approximately one month later she informed her mother. She testified that appellant had whipped her once when she came home late.

The record further shows that some five or six weeks after the alleged offense the prosecutrix and her mother had a discussion and the alleged offense was then reported to the police and a medical examination followed.

No medical testimony was offered.

Testifying in his own behalf, appellant denied the alleged offense occurred.

Article 1184, Vernon's Ann.P.C., provides as follows:

"The definition of 'force' as applicable to assault and battery applies also to rape, and it must have been such as might reasonably be supposed sufficient to overcome resistance, taking into consideration the relative strength of the parties and other circumstances of the case."

"By such definition the facts of each individual case determine whether

force exists, which, of necessity, renders it impossible to lay down a fixed standard by which it may be said that force has or has not been applied, in a rape case." Bundren v. State, Tex.Cr.App., 211 S.W.2d 197.

In 48 Tex.Jur.2d, 2nd ed., Rape, Sec. 6, p. 638, the rule is stated:

"Where force is the ground on which the commission of rape is alleged, the crime will not be constituted unless there was a combination of force and lack of consent. But something more than the mere want of consent must also be shown; there must have been resistance on the part of the female dependent in amount on the circumstances surrounding her at the time and on the relative strength of herself and the accused. Moreover, the resistance must have been real and not feigned. Threats apart, her failure to make every exertion in her power under the circumstances to prevent the crime will result in a presumption of consent."

See also Killingsworth v. State, 154 Tex. Cr.R. 223, 226 S.W.2d 456.

In Lewis v. State, 154 Tex.Cr.R. 329, 226 S.W.2d 861, the defendant was charged with the rape of his 16 year old daughter. There, as in the case at bar, the State waived the statutory rape count in the indictment and elected to proceed on the count charging rape by force and threats. In such case we acknowledged that the prosecutrix "being the child of the father, reared by him, and under tutelage and guidance, might call for a different degree of resistance than if the accused were a stranger." Nevertheless, she is expected to exercise *some* resistance to her father's advances. In Lewis, the 230 pound defendant cursed the prosecutrix, pulled her hair, slapped her face, knocked her down twice, kicked her, forced her to drink whiskey, ordered her to take off her clothes, pushed her into the back seat of his car, held her shoulders down and committed the act of rape. During such time the prosecu-

trix was trying to kick and push him away. The conviction was affirmed because the evidence clearly reflected a rape by force.

In the instant case the prosecutrix failed to make any struggle, no matter how slight, and did not cry out at any time prior to or during the alleged act, even though her younger sister was nearby. While a daughter might not be expected to exercise a substantial degree of resistance toward a father who was dominant, strong willed and "ruled the house with an iron hand," the law would require her to exercise some form of resistance, unless there are circumstances which tend to remove any possibility that resistance should be expected. Certainly her testimony as to whether she was in fear or afraid of the appellant was not at all consistent.

Finding the evidence insufficient to support rape by force, we next consider the threats made.

Article 1185, V.A.P.C., provides:

"The threat, must be such as might reasonably create a just fear of death or great bodily harm, in view of the relative condition of the parties as to health, strength and other circumstances of the case."

It is difficult to conclude that threats related come within the above definition.

In May v. State, 172 Tex.Cr.R. 490, 358 S.W.2d 379, this Court said:

"The rule in this state, as set forth in the early case of Serio v. State, 22 Tex. App. 633, 3 S.W. 784, is that in the absence of proof of threats it is error for the trial court to authorize the jury to convict on the theory that the rape was committed by threats. Also, see: Fite v. State, 139 Tex.Cr.R. 592, 140 S.W.2d 848. In addition, the threats must be of such nature as would operate upon the mind of the prosecutrix to such an extent as to cause her to yield to the attacker. Diggles v. State, 99 Tex.Cr.R. 288, 269 S.W. 88."

As we interpret the record, the threats that were made occurred after the alleged act and were not made to cause the prosecutrix to yield, but to prevent her from informing her mother. The prosecutor made this same interpretation as to the nature of the threats in his argument to the jury.

In Diggles v. State, 99 Tex.Cr.R. 288, 269 S.W. 88, this Court said:

"There is but one count in the indictment, and it charges rape by force, threats, and fraud. Prosecutrix is the daughter of appellant. She testified that on the night of the alleged occurrence she was in bed with a younger sister, and in another bed in the same room was her mother; that appellant came and got in bed with her and had intercourse with her; that he told her if she told it he would whip her. This is all the proof as to force, threats, or fraud. Manifestly there was no fraud, and nothing in the record evidences force. Granting that appellant told her that if she told it he would whip her, this wholly fails to show a threat having for its purpose the securing of carnal knowledge. Its only proper interpretation is a threat of punishment or violence if the fact of intercourse is communicated to some one else. This is not sufficient. When reliance is had upon threats, the testimony must show such threat or statement as would operate upon the mind of the injured female to cause her, by reason thereof, to yield her person to the ravisher. The evidence is not sufficient to support the verdict. In addition to what we have just said concerning the facts, the record is bare of any claim of outcry, resistance, or remonstrance * * *"

Thus we find the evidence insufficient to support rape by threats. Broadway v. State, Tex.Cr.App., 418 S.W.2d 679 and Most v. State, Tex.Cr.App., 386 S.W.2d 537, are easily distinguishable on their facts.

 Of course, "[w]here rape by force and threats is alleged, it is proper to consider the cogency that the threats may have contributed to the force, and the intensifying influence that the force may have imparted to the threats." 48 Tex.Jur.2d, Rape, Sec. 4, p. 637.

In view of our discussion of the evidence as to force and threats, including the fact that the threats were made after the alleged act, it appears that the above rule would not come into play.

 We are confronted with a fact situation showing a 16 year old high school student who has been engaging in sexual relations with her stepfather for approximately six years and goes to his bedroom on the date in question to take him coffee, does not try to leave, takes off part of her clothes at his request, makes no outcry, and does not resist in any way even though she acknowledges she knew what was going to happen when she sat on the bed.

Viewed in the light most favorable to the jury's verdict, we cannot conclude the evidence is sufficient to sustain that verdict.

The judgment is reversed and cause remanded.