MALVIN MILLER v. THE STATE.

No. 17603.   Delivered May 29, 1935.
Appeal Reinstated June 28, 1935.
Rehearing Denied October 16, 1935.

218

The opinion states the case.

*Bozeman & Cathey,* of Quitman, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is rape; the punishment, confinement in the penitentiary for eight years.

The transcript fails to show that any sentence was ever pronounced against appellant. Art. 769, C. C. P., provides that in all felony cases save where the death penalty has been assessed sentence shall be pronounced "before the appeal

is taken." In such cases it has always been held that sentence was prerequisite to appeal, and that in the absence of a sentence this court is without jurisdiction. Nichols v. State, 59 S. W. (2d) 388.

It is observed that the caption fails to show the date of the adjournment of the trial court. Under the decisions this defect also requires a dismissal of the appeal. Howle v. State, 43 S. W. (2d) 594, and authorities cited.

The appeal is dismissed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON THE MERITS.

CHRISTIAN, JUDGE.—The record having been perfected, the appeal is reinstated and the case considered on its merits.

Prosecutrix, Exa Crone, and appellant drove together to Wells Lake, where, according to the version of prosecutrix, appellant assaulted and ravished her. She testified that appellant threatened to shoot her or throw her in the lake if she refused him sexual favors. Eventually he grabbed hold of her, but she was successful in freeing herself. He grabbed her again and crossed her hands behind her. She fought him until she was exhausted. She begged him to desist and take her home. He finally put her in the car and shoved her down on the cushion with her hands under her. She called for help but no one responded. During the struggle she bit appellant on the cheek. He cursed her and told her he ought to kill her. She fought him to her utmost. Although she could not free her hands, she was kicking and making every effort to prevent him from accomplishing his purpose. After ravishing her, appellant carried her to her home. She did not report the matter immediately, having decided to take the matter in her own hands and kill appellant. Procuring a pistol, she instituted a search for him, but was unable to find him. Touching her condition after the alleged assault, prosecutrix testified, as follows: "There were bruises and finger prints on my body at the time Mr. Taylor and Mr. Gist were at my home and saw me. There were many. There were finger prints on my left shoulder, blood-shot places; on the left leg below the knee, blue spot about the size of a dollar, and above the knee skinned places and on the hip cut places; and my right elbow was skinned. Mr. Taylor and Mr.

Gist saw the places on my neck and shoulder and they saw the places on my elbow. They saw the places below my knee but they did not see the places on my hip."

The examining physician testified that prosecutrix had skinned places on her elbow, an abrasion on her left shoulder and another on the left knee. Further, he testified that an examination of the female organ disclosed that "the vaginal orifice" was bleeding; and that there were abrasions around it. The hymen was gone. We quote from his testimony as follows: "The vagina had evidently been entered. I say that on account of the vaginal orifice was red,—little adenitis. By that I mean you noticed it congested, red, edges of it introduced under gloved finger, it would ooze blood, due to some force that had been,—due to an injury, force."

The sheriff testified to having observed injuries on the left side of the neck of prosecutrix and skinned places on one of her knees. Touching the condition of her clothing, he said: "The undergarments, step-ins, had blood on them. I don't recall whether they were torn or not but I remember the belt of her dress was broken. Don't recall whether the step-ins were torn or not. I think there was a torn place on the dress and looked like some grass or where it had rubbed on the grass,—green on the dress." The mother of prosecutrix testified that prosecutrix had a blue spot on her left leg, several scratches on her neck and one on her hip. As to the condition of the clothing of prosecutrix, she said: "Her dress was torn and her step-ins were torn; they were torn up one leg this way, a little piece and a little piece on the other one. They had blood on them. There was blood on the slip." The clothes were introduced in evidence and the statement of facts shows that they were in the condition described by the mother of prosecutrix.

Testifying in his own behalf, appellant admitted that he was with prosecutrix on the occasion in question, but denied that he had sexual relations with her. He testified that on occasions he had placed his hands on her legs and breasts, but declared that she would not permit him to have intercourse with her. He testified, further, that they had talked about getting married, and that on the occasion of their visit to the lake, she had suggested that they marry on that day. At this juncture, we quote from his testimony as follows: "She had told me her monthly periods would be on that day, warned me two weeks ahead of time. We had talked of getting married and she wanted to put it off on that particular

Sunday on that account. We talked about getting married at that time. I did not have any scuffle with her there; we did not have a scuffle there at all, unless her proving to me she was not sick would be a scuffle. I asked her if we were that close to getting married why couldn't she let me see; I had my hands on her everywhere before that time. I did make an effort to see at that time. We were sitting there and I pulled her dress up to see, and she was menstruating. She grabbed her dress and shoved it down between her legs like that."

He testified further to having stopped at several places while taking prosecutrix home.

We deem the evidence sufficient to support the conviction.

It is shown in bill of exception No. 1 that prosecutrix testified that when appellant was assaulting her he reached his hand in his shirt and said that he ought to kill her; that she did not know whether he had a gun on that day or not. Over appellant's objection, the district attorney asked the witness if she had been with appellant on any other occasion when she saw a pistol in his possession. She answered in the affirmative. We think this testimony was admissible as tending to show that prosecutrix had reason to believe that appellant was armed at the time he threatend to kill her.

It is shown in bill of exception No. 2 that the district attorney asked prosecutrix, over appellant's objection, the following question: "I will ask you to state to this court and the jury, Miss Exa, whether you offered all the resistance you could to that act on his part?" The witness answered: "Every bit I could and more too." If the testimony was improper, we do not think its reception should work a reversal. Appellant denied making any assault on prosecutrix. In testifying before the jury, she described the manner in which she fought appellant. Her description of the assault warranted the conclusion that she resisted to the utmost. Under the circumstances, we are unable to perceive how the answer disclosed in the bill could have injured appellant.

Appellant excepted to paragraph 2 of the court's charge as follows: "Defendant excepts to paragraph 2 of the main charge of the court because the same places the burden of proof upon the defendant, and does not correctly define rape by force." We are unable to agree with appellant that his contention is correct. The court defined force as follows: "To constitute rape by force, the accused must have ravished the alleged injured female by having carnal knowledge of her

without here consent and against her will by force, and the force used must have been such as might reasonably be supposed sufficient to overcome all resistance, within her power, taking into consideration the relative strength of the parties, and other circumstances of the case. * * *" After setting forth said definition in paragraph 2, the court further advised the jury: "And penetration of the sexual organs of the female alleged to have been ravished by the male organ of the accused must be proved beyond a reasonable doubt." We perceive nothing in said paragraph that shifts the burden of proof.

We are unable to agree with appellant that the court should have charged on either assault with intent to rape or aggravated assault. According to the version of appellant, he made no attack on prosecutrix whatever. According to the version of prosecutrix, he assaulted her and had sexual intercourse with her.

A careful examination of all of appellant's contentions leads us to the conclusion that reversible error is not presented.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant moves for a rehearing, alleging it to be reversible error for the court to fail to charge on aggravated assault. There was no exception to the failure of the court in this regard, as is shown by the qualification placed on bill of exception No. 8. We further observe that we have carefully gone over the testimony and are of opinion that same wholly fails to exhibit a case in which harm could have resulted to the accused from the omission of such charge. The testimony is in direct conflict,—that for the State affirming—that for the defense denying,—any grade of assault save such as constituted rape.

Nothing in the testimony for the State supports a possible conclusion for any grade of assault less than rape. Nothing in the defensive testimony supports any theory that appellant took hold of the prosecutrix in any effort to induce her to submit to him without force; or in the form of indecent familiarity. Appellant did testify that prosecutrix suggested to him on the occasion in question that they marry that night,

and that he replied that she had told him her menses would be on her on that Sunday night, and that when she said in reply that she was not sick,—he raised her dress and saw blood on her under-garments. He swore that this was not a part of any effort to have carnal knowledge of her, and that what he did in this connection did not cause prosecutrix any offense. She denied this occurrence. We see nothing in this to demand at the hands of the court a charge on aggravated assault.

The motion for rehearing is overruled.

*Overruled.*