Trummie Neal RUCKER A/K/A Trummie Neal Howard, Appellant,

v.

The STATE of Texas, Appellee.

No. 57301.

Court of Criminal Appeals of Texas, Panel No. 2.

June 13, 1979.

Rehearing Denied June 18, 1980.

Donald W. Rogers, Jr., Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Andy Tobias, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, ROBERTS and ODOM, JJ.

## OPINION

ROBERTS, Judge.

After finding the appellant guilty of aggravated rape, a jury assessed his punishment at confinement for life. The appellant contends that the evidence was insuffi-

cient to prove the aggravating element of threat of death or serious bodily injury (V.T.C.A., Penal Code, Section 21.03(a)(2)).

The appellant evidently hid in the complainant's car while she was in a post office. Soon after the complainant returned to her car and drove out of the parking lot of the post office, the appellant's hand came over the seat and grabbed the complainant's face. The complainant struggled to get free, but the appellant crawled into the front seat and began to hit the complainant's face and chest with his fist. The complainant was dazed by the blows, which caused her nose and mouth to bleed. She obeyed the appellant's instructions to turn left and to stop after driving about half a block, but she refused to back her car into a gravel, side road. The appellant continued to hit the complainant's face and chest. He pulled the complainant out of the passenger side of the car and, holding her by the arm, walked down the gravel road a few feet before pushing her down into some weeds by the side of the road. The appellant took off one of the complainant's shoes. The complainant struggled to get up. The appellant grabbed her again, and they walked further down the road, where the appellant again pushed the complainant down in the weeds. The complainant could not remember being hit since the time she left the car. She struggled and kicked her feet, trying to get up. The appellant pulled off the complainant's pants and undergarments. He asked the complainant to remove her top; she refused, and the appellant removed the top and the remaining undergarments. The complainant suffered scratches and pain from lying on the weeds and gravel. The appellant then forcibly had sexual intercourse with the complainant. During this act, the appellant asked the complainant why she had gone to the post office, what her age was (she was 24), and whether she was "enjoying it." The appellant asked the complainant to kiss him; when she refused, the appellant hit her in the face with his fist. (To the prosecutor's inquiry whether she considered the blows to be a threat on her life, the complainant answered "Yes.") After she kissed the appellant's cheek, the complainant said that that was the best she could do because her lips were sore. The appellant again asked if the complainant were "enjoying it." When the complainant said that she was not, the appellant asked her to suck his penis; she demurred, again saying that her lips were too sore. The appellant lifted the complainant up from the ground and told her to run as far and as fast as she could, or he would shoot her; the complainant ran. There was no evidence that the appellant had a gun or any other weapon. (A few minutes later the appellant and the complainant met at the car, where the appellant again struck the complainant and stole her car.) The complainant's bodily injuries consisted of black and swollen eyes, a swollen face, cuts inside her lip, bruised chest and breasts, scratched and abraded buttocks and legs, a rash from poison ivy, and pain. She suffered no concussion, no broken bones, no internal injury, no scars, no serious permanent disfigurement, and no protracted loss or impairment of any part of her body. Compare the definitions of "bodily injury" and "serious bodily injury" in V.T.C.A., Penal Code, Section 1.07(a)(7) & (34). The only medical treatment given was some "pain medicine."

The only verbal threat was that the complainant would be shot if she did not run. This threat was made after the rape was completed; it did not "compel submission to the rape" as is required by V.T.C.A., Penal Code, Section 21.03(a)(2) for the element of aggravation. The jury's verdict on the element of aggravation can be upheld only if an implied threat of death or serious bodily injury was communicated by the appellant's acts and conduct. See *Blount v. State*, 542 S.W.2d 164 (Tex.Cr.App.1976). Absent an express, verbal threat, this Court has held the evidence sufficient to prove an implied threat of death or serious bodily injury only when a gun or a knife was used, or serious bodily injury was in fact inflicted, or both. *Rogers v. State*, 575 S.W.2d 555 (Tex.Cr. App.1979).

■ The facts of this case are very similar to those of *Rogers*, supra: no express, verbal threat was made to compel submis-

sion to the rape; no weapon was used; the appellant struck the complainant with his fist, albeit more blows were struck in this case; no serious bodily injuries (as that term is defined by statute) were inflicted; the appellant testified that she was in fear for her life. The same result must be reached as in *Rogers*, supra. Although the evidence was sufficient to prove simple rape, it was not sufficient to prove the element of aggravation. The appellant's motion for an instructed verdict of not guilty of aggravated rape should have been granted.

By the doctrines of *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), our holding bars a retrial of the appellant for aggravated rape. We do not hold today that a retrial for simple rape is barred.

The judgment is reversed and the cause is remanded.

ODOM, Judge, concurring.

The dissenting opinion and *Seaton v. State*, Tex.Cr.App., 564 S.W.2d 721, upon which it relies, fail to consider the definitions of "bodily injury" and "serious bodily injury" that the Legislature provided in V.T.C.A., Penal Code, Sec. 1.07(a)(7) and (34). The aggravated rape alleged by the State in this case is distinguished from rape under V.T.C.A., Penal Code, Sec. 21.03(a)(2), which provides that rape under Sec. 21.02 becomes aggravated rape if the defendant "compels submission to the rape by threat of death, serious bodily injury, or kidnapping to be imminently inflicted on anyone."

Specifically, the distinguishing factor in this case is whether appellant threatened serious bodily injury. The statutory definition of that term in Sec. 1.07(a)(34), supra, is:

"  . . . bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

Bodily injury, on the other hand, means "physical pain, illness, or any impairment of physical condition." Sec. 1.07(a)(7), supra.

Although I agree, as stated in *Rogers v. State*, Tex.Cr.App., 575 S.W.2d 555 (quoting from *Blount v. State*, Tex.Cr.App., 542 S.W.2d 164), and in the dissenting opinion, which proposes to overrule *Rogers,* that a threat can be communicated by action or conduct as well as words, the issue upon which the sufficiency of the evidence turns is whether a threat of serious bodily injury *as that term is statutorily defined* was communicated by appellant's conduct. I concur that the evidence in this case is insufficient to meet the test applying that statutory definition. The lower standard used by the dissent, that the use of force implies a threat of escalating force, would elevate all rapes by force or threats to aggravated rapes and abolish the distinction that the Legislature has created between these two offenses. If that distinction is to be abolished, it must be done by the Legislature and not by this Court. *Seaton v. State*, supra, to the extent of its conflict with that distinction and with this decision and with *Rogers v. State*, supra, should be overruled.

DOUGLAS, Judge, dissenting.

The majority holds the aggravated rape cannot be proved by showing an implicit, physical threat. This holding is based on our decisions in *Rogers v. State*, 575 S.W.2d 555 (Tex.Cr.App.1979), a decision by a two-judge panel, one of whom concurred in result only. *Rogers* represented a departure from our prior holdings. This writer cannot agree that a jury is not authorized to conclude that the repeated striking of a victim, while insisting upon sexual intercourse, constitutes a threat of more serious harm if she refuses.

In *Seaton v. State*, 564 S.W.2d 721 (Tex. Cr.App.1978), an aggravated rape of a child prosecution, the defendant contended that the evidence was insufficient. The only evidence indicating a threat of serious bodily injury was the prosecutrix' testimony that Seaton had struck several times on the face. She sustained "bruises on her face and head, two black eyes and other bruises on her body." We observed:

"The term 'threats' is not limited to the use of verbal aggression but may include acts amounting to an offer to use future force. Threats may be communicated by actions, words or deeds."

We then concluded that:

"[Seaton's] acts in beating her, as she testified, constituted sufficient evidence of a threat of serious bodily injury to this prosecutrix."

In *Berry v. State*, 579 S.W.2d 487 (Tex. Cr.App.1979), we again were confronted with a challenge to the sufficiency of the evidence to prove that the rape was aggravated. The prosecutrix testified that Berry grabbed her hard and placed a sharp, flat object against her neck. The object felt like a knife. Berry told her she would not be hurt if she cooperated. We again observed that a threat of serious bodily injury could be proved by acts and held that the evidence was sufficient.

In *Rogers v. State*, supra, the evidence showed that the defendant struck a single hard blow that blackened both of the victim's eyes and knocked her to the floor. No other threat was made and Rogers did not strike the prosecutrix again. We held that that evidence was insufficient to show a threat of serious bodily injury.

In the instant case, the majority ignores both *Seaton* and *Berry*. They concluded that repeated physical blows that caused "black and swollen eyes, a swollen face, cuts inside her lip, bruised chest and breasts, scratched and abraded buttocks and legs . . . and pain," were not a threat of serious bodily injury. These injuries were more severe than those inflicted in either *Seaton* or *Berry*. Although *Berry* is somewhat complicated by the possibility of a knife being used, *Seaton* and the instant case present a clear conflict.

This writer can perceive no reason to hold that a threat cannot be conveyed implicitly by physically beating the victim. Logic compels us to conclude that if a rapist repeatedly strikes his victim while insisting that she have intercourse, then should she refuse to cooperate he will escalate the force he is applying. *Rogers*, to the extent that it holds a single hard blow is insufficient to prove a threat, can be factually distinguished from *Seaton* and the instant case. To the extent that *Rogers* can be read to hold that a threat can never be proved with evidence of physical aggression, *Rogers* should be overruled.

In the instant case, Rucker traumatized his victim through repeated physical aggression. The blows he struck caused greater injury than the blows struck in *Seaton*. The jury, after hearing all the facts, was authorized to conclude that these blows constituted a threat of serious bodily injury should the prosecutrix not cooperate.

The judgment should be affirmed.

Before the court en banc.

## OPINION ON STATE'S MOTION FOR REHEARING

ONION, Presiding Judge.

Under the former Penal Code, rape was a capital offense. Articles 1183–1189, V.A. P.C., 1925.

Article 1189, V.A.P.C., 1925, provided:

"A person guilty of rape shall be punished by death or by confinement in the penitentiary for life, or for any term of years not less than five."

Article 1183, V.A.P.C., 1925, defined rape.

Article 1184, V.A.P.C., 1925, provided:

"The definition of 'force' as applicable to assault and battery applies also to rape, and it must have been such as might reasonably be supposed sufficient to overcome resistance, taking into consideration the relative strength of the parties and other circumstances of the case."

Article 1185, V.A.P.C., 1925, provided:

"The threat must be such as might reasonably create a just fear of death or great bodily harm, in view of the relative condition of the parties as to health, strength and other circumstances of the case."

Fraud was defined in Article 1186, V.A. P.C., 1925.

When the current Penal Code was enacted, the death penalty was limited to capital murder. See V.T.C.A., Penal Code, §§ 19.03 and 12.31.

Rape became a second degree felony[1] under the current Penal Code, V.T.C.A., Penal Code, § 21.02, and aggravated rape became a first degree felony.[2] V.T.C.A., Penal Code, § 21.03.

V.T.C.A., Penal Code, § 21.02, provides:

"(a) A person commits an offense if he has sexual intercourse with a female not his wife without the female's consent.

"(b) The intercourse is without the female's consent under one or more of the following circumstances:

"(1) he compels her to submit or participate by force that overcomes such earnest resistance as might reasonably be expected under the circumstances;

"(2) he compels her to submit or participate by any threat, communicated by actions, words, or deeds, that would prevent resistance by a woman of ordinary resolution, under the same or similar circumstances, because of a reasonable fear of harm;

"(3) she has not consented and he knows she is unconscious or physically unable to resist;

"(4) he knows that as a result of mental disease or defect she is at the time of the intercourse incapable either of appraising the nature of the act or of resisting it;

"(5) she has not consented and he knows that she is unaware that sexual intercourse is occurring;

"(6) he knows that she submits or participates because she erroneously believes that he is her husband; or

"(7) he has intentionally impaired her power to appraise or control her conduct by administering any substance without her knowledge.

"(c) An offense under this section is a felony of the second degree."

It is thus clear that rape under said § 21.02(a), (b)(1) and (2) can be committed by "force" or "threat." Both terms are broadly defined.

V.T.C.A., Penal Code, § 21.03 (Aggravated Rape), provides in part:

"(a) A person commits an offense if he commits rape as defined in Section 21.02 of this code or rape of a child as defined in Section 21.09 of this code and he:

"(1) causes serious bodily injury or attempts to cause death to the victim or another in the course of the same criminal episode; or

"(2) compels submission to the rape by threat of death, serious bodily injury, or kidnapping to be imminently inflicted on anyone.

"(b) * * *."

The Legislature defined bodily injury in V.T.C.A., Penal Code, § 1.07(a)(7), as follows: "(7) 'Bodily injury' means physical pain, illness, or any impairment of physical condition." It defined serious bodily injury in V.T.C.A., Penal Code, § 1.07(a)(34), as follows: "(34) 'Serious bodily injury' means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

The first count of the indictment upon which the instant conviction was based alleged the appellant "did then and there unlawfully, intentionally and knowingly by force and by threatening the imminent infliction of serious bodily injury and death to P_____ K_____ O_____, a female not his wife and hereafter styled the complainant,

---

1. V.T.C.A., Penal Code, § 12.33, provides:

"(a) An individual adjudged guilty of a felony of the second degree shall be punished by confinement in the Texas Department of Corrections for any term of not more than 20 years or less than 2 years.

"(b) In addition to imprisonment, an individual adjudged guilty of a felony of the second degree may be punished by a fine not to exceed $10,000.

2. V.T.C.A., Penal Code, § 12.32, provides:

"An individual adjudged guilty of a felony of the first degree shall be punished by confinement in the Texas Department of Corrections for life or for any term of not more than 99 years or less than 5 years."

have sexual intercourse with complainant and without the consent of the complainant."

The indictment thus charged aggravated rape under V.T.C.A., Penal Code, § 21.-03(a)(2)—compelling submission to rape by threatening imminent infliction of serious bodily injury and death.

The question presented by this appeal is whether the evidence was sufficient to support a conviction for aggravated rape as alleged. More particularly, the question is whether the element of aggravation as alleged under V.T.C.A., Penal Code, § 21.-03(a)(2), was proven. The facts of the rape were set out in the opinion on original submission. They need not be repeated. The prosecutrix's bodily injuries consisted of black and swollen eyes, a swollen face, cuts inside her lips, bruised chest and breasts, scratched and abraded buttocks and legs, a rash from poison ivy, and pain. Most of these injuries were the result of appellant hitting the prosecutrix in the face and chest with his fist. She suffered no concussion, no broken bones, no internal injury, no serious permanent disfigurement, and no protracted loss or impairment of any part of her body. She did not suffer "serious bodily injury" as that term is defined by V.T.C.A., Penal Code, § 1.07(a)(34). Further, there was no evidence of any express verbal threat to compel submission to rape. No weapon was displayed, seen or used. Thus, the question of whether the element of aggravation alleged was proven arises.

■ There can be no question that a threat can be communicated or conveyed other than by words. Actions and deeds may also constitute threats (see *Seaton v. State*, 564 S.W.2d 721 (Tex.Cr.App.1978); *Berry v. State*, 579 S.W.2d 487 (Tex.Cr.App. 1979); *Church v. State*, 552 S.W.2d 138 (Tex.Cr.App.1977); *Williams v. State*, 500 S.W.2d 163 (Tex.Cr.App.1973). This has been the rule both before and after the enactment of the current Penal Code.

■ The problem that presents itself in the instant case is whether the actions and deeds of the appellant were sufficient to sustain the allegations of the indictment and to constitute the threat alleged. Perhaps stated another way, when there is no verbal threat, when do actions and words constituting a threat become more than force (that overcomes such earnest resistance as might reasonably be expected under the circumstances) and more than any threat (that would prevent resistance by a woman of ordinary resolution) so as to constitute an element of aggravation under V.T.C.A., Penal Code, § 21.03(a)(2)—a threat of death, serious bodily injury, or kidnapping to be imminently inflicted on anyone? Surely the Legislature intended that the threat of death or serious bodily injury contemplated something more than "force" and "threat" as used in V.T.C.A., Penal Code, § 21.02 (ordinary rape). Otherwise every time "force" (actions and deeds) was used there would automatically be aggravated rape as it would be considered a threat of serious bodily injury. In *Rogers v. State*, 575 S.W.2d 555 (Tex.Cr.App.1979), it was held that, absent an express verbal threat, evidence was sufficient to prove aggravated rape under said § 21.03(a)(2) only when a gun, knife, or a deadly weapon was used, or serious bodily injury was in fact inflicted. In absence of a verbal threat, we conclude *Rogers* was correct in interpreting V.T.C.A., Penal Code, § 21.03(a)(2), as reflecting the legislative intent. To the extent that *Seaton v. State*, 564 S.W.2d 721 (Tex.Cr.App.1978), is in conflict, it is overruled.

Appellant's counsel suggests that all the current Penal Code has done is created confusion and that the code should be amended to create a single first degree felony offense of rape with the assessor of punishment having the right to fix the penalty within a wide range of punishment depending upon the circumstances involved. This is a commendable view that the Legislature should seriously consider. We note it in passing.

Concluding the evidence is insufficient to support the conviction for aggravated rape,

we overrule the State's motion for rehearing.

DOUGLAS and DALLY, JJ., dissent.

PHILLIPS, Judge, concurring.

I agree that the evidence in this case, that appellant repeatedly struck the complainant with his fists without inflicting serious bodily injury, is insufficient to show a threat of the imminent infliction of serious bodily injury or death. Thus I agree that the evidence does not support a conviction under V.T.C.A. Penal Code, § 21.03(a)(2).

I do not agree, however, with the implicit holding in *Rogers v. State*, 575 S.W.2d 555 (Tex.Cr.App.1979) that absent an express verbal threat, the evidence will sustain a conviction under § 21.03(a)(2) only when a "knife, gun, or other weapon" is used. Acts not involving the display of a deadly weapon as defined by V.T.C.A. Penal Code § 1.07(a)(11)(A) can constitute a threat of serious bodily injury or death.[1]

In *Berry v. State*, 579 S.W.2d 487 (Tex. Cr.App.1979), the conviction was sustained where the defendant held an unidentified "sharp object" to the complainant's neck. The object was not shown to be a deadly weapon as defined in § 1.07(a)(11)(A), supra. Objects that are not designed or adapted as weapons could be used to communicate a threat of serious bodily injury; e. g. a pencil held to the victim's eye, or a hot branding iron displayed to the victim in a threatening manner. Even further, an assailant's companion holding the victim's child over a balcony railing would constitute a clear threat of serious bodily injury or death.

Acts such as these are the functional equivalent of express verbal threats, and could support a conviction under § 21.03(a)(2).

I concur in the result reached in this case.

1. § 1.07(a)(11)(A) defines "deadly weapon" as "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury."

CLINTON, Judge, dissenting.

The plurality opinion accurately quotes the statutes, the construction of which is in issue in this case; likewise the plurality correctly reasons that "the Legislature intended that the threat of death or serious bodily injury contemplated something more than 'force' and 'threat' as used in V.T.C.A. Penal Code, § 21.02 (ordinary rape)." The inflection, however, occurs in averting, without consideration or analysis, the question that the plurality opinion itself poses, that being:

When do actions and words constituting a threat become *more* than force (that overcomes such earnest resistance as might reasonably be expected under the circumstances) and *more* than any threat (that would prevent resistance by a woman of ordinary resolution) so as to constitute an element of aggravation under V.T.C.A. Penal Code, § 21.03(a)(2)—a threat of death or serious bodily injury . . . to be imminently inflicted on anyone?

Ignoring this issue, the plurality makes a leap which in effect concludes that the application of force can *never* of and by itself pass from that which merely "overcomes such earnest resistance as might reasonably be expected under the circumstances," into the realm of conduct which "compels submission . . . by threat of death or serious bodily injury. . . ." The plurality thereby assumes a legislative intent that unaggravated "rape by force" conduct is mutually exclusive with "aggravated rape by threats" conduct absent a verbal threat or the display of a weapon. The result of such an interpretation is that the only way the application of physical force by the actor can rise to the level of an aggravating circumstance is the point at which he inflicts "serious bodily injury . . . *in the course of the same criminal episode*" on his victim. The plurality attributes this anomalous state of affairs to the Legislature. Neither this restrictive interpretation

of the law nor its attribution to the Legislature is warranted.[1]

## I. *Statutory Construction*

A better approach would attend a review of the statutes according to standard principles of statutory construction. Section 1.02, V.T.C.A. Penal Code entitled "Objectives of Code" provides in part:

. . . [T]he provisions of this code are intended, and shall be construed, to achieve the following objectives:

\* \* \* \* \* \*

(3) to prescribe penalties that are proportionate to the seriousness of offenses . . . .

Consistent with such an objective, the Legislature divided the former single rape proscription into basically two proscriptions— rape and an aggravated form thereof—and attached correlative penalty gradations for these two basic types of rapes. Old Article 1183 provided:

rape is the carnal knowledge of a woman without her consent obtained by force, threats or fraud . . . .

1. Of more than academic interest is the observation that the plurality puts a rape transaction on an escalator that moves upward only—from the level of force and threat of simple rape up to the level of threat of death or serious bodily injury—whereas in trial of aggravated rape the charge of the court, assuming evidentiary support, places the transaction on a downward moving escalator—from the higher level of threat of serious bodily injury down to the level of force and threat and, perhaps, even lesser levels of assaultive offenses. See, e. g., 8 Texas Practice 294, Willson's Criminal Forms Annotated, Morrison & Blackwell, § 95.02 and McClung, Jury Charges for Texas Criminal Practice (Rev. Ed. January 1979) 61 at 62. Thus, in trial initially the greater offense embraces the lesser ones. Given legislative awareness of such matters of trial procedure, one may well argue that it intended to authorize prosecution of the whole rape transaction in order to permit the fact finder to determine, first, whether threat of death or serious bodily injury was proven and, if not, then to find "mere" force or threat compelled simple rape. In other words, all other elements being proved, that which is not an aggravated rape necessarily becomes simple rape.

When the Legislature adopted the elements of aggravated rape, the description it gave to simple rape by force or threat was:

Article 1189 provided as a penalty range for *all* rapes, "death or . . . confinement in the penitentiary for life, or for any term of years not less than five."

It is evident then, that in the event of conviction for rape under prior laws, a defendant was subject to the most extreme penalties provided by law irrespective of the facts and circumstances surrounding commission of the offense. The intent in enacting §§ 21.02 and 21.03 as separate proscriptions with different penalty ranges, was to sort out lower grades of offenses and, concomitantly, to reduce the available penalties for less brutal rapes to that of the second degree felony range. The manifestation of such intent was the enactment of § 21.02 which: (1) defines rape as "sexual intercourse with a female not [the] wife [of the actor] without [her] consent;" (2) prescribes the circumstances under which the intercourse is without the female's consent; and (3) creates the previously unknown second degree felony punishment range for penalty assessment on conviction for rape. The extreme penalties provided by prior law were retained (excepting death: Ac-

"(1) . . . by force that *overcomes* such earnest *resistance* as might reasonably be expected under the circumstances;
(2) . . . by *any threat* that would *prevent resistance* by a woman of ordinary resolution . . . ."

Contrasted with threat of death or serious bodily injury, the two original criteria of force and threat are minimal indeed. Thus, there was then, and still is, a vast area of "middle ground" between the formulation of mere force or threat and that force sufficient to constitute a threat of death or serious bodily injury. How, then, can one so surely assert that the Legislature intended as the line between rape and aggravated rape that which the plurality draws. After all, the function of the mere force and threat standards is to measure lack of consent. When a rape transaction is being first examined for sufficiency of force to constitute a threat of death or serious bodily injury lack of consent is practically assumed. Using the downward escalating approach one may just as reasonably conclude that the intended line is closer to the mere force and threat of simple rape, so that the fact finder is authorized to decide that conduct in the "middle ground" is an aggravated threat of death or serious bodily injury.

cord: *Coker v. Georgia*, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977)), as appropriate punishment for rapes in which the actor causes serious bodily injury, attempts to cause death, or compels submission by threat of death, serious bodily injury or kidnapping. Sections 21.03(a)(1) and (2), V.T.C.A. Penal Code.

The definitions of "force" and "fraud" provided by old Articles 1184 and 1186 were substantially recodified as "circumstances" under which "the intercourse is without the female's consent" under new § 21.02.[2] Article 1185 entitled "Threat" mandated:

> The threat must be such as might reasonably *create* a just *fear of death or great bodily harm*,[3] in view of the relative condition of the parties as to health, strength and other circumstances.

Both § 21.02 and § 21.03 of the new code address rapes by threat; upon comparison, it is evident that the thrust of old Article 1185 was incorporated by § 21.03[4] which provides:

> (a) A person commits an offense if he [has sexual intercourse with a female not his wife without the female's consent] . . . and he:
>
> \*   \*   \*   \*   \*   \*
>
> (2) compels submission to the rape by *threat of death, [or] serious bodily injury* . . . to be imminently inflicted on anyone.

Therefore, what this Court in the past has found to be sufficient evidence to support a conviction for old code "rape by threat" should not be overlooked as a source of guidance, depending on the circumstances,

in our analysis of the sufficiency of proof for "aggravated rape by threats" under our new code.

Section 1.05, V.T.C.A. Penal Code instructs that our penal statutes are not to be strictly construed, but rather, "shall be construed according to the fair import of their terms, to promote justice and effect the objectives of the code." We are then referred to provisions of the Code Construction Act[5] for guidance, § 2.01 of which provides:

> Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.

It is appropriate then, before the phrase "threat of death, [or] serious bodily injury" acquires the technical meaning suggested by the plurality that an analysis of the common usage of the word "threat" and how it meshes in the context of the statutes, be made. Webster's New Collegiate Dictionary (1977), provides that a "threat" is "an *expression* of an *intention* to inflict evil, injury or damage." Black's Law Dictionary defines "threat" as:

> 1) A *declaration* of an *intention* or determination to inflict punishment, loss or pain on another, or to injure another by the commission of some unlawful act.
>
> 2) A *menace*; especially any *menace* of *such a nature* and extent *as to unsettle the mind of the person on whom it operates*, and to take away from his

---

2.  Article 1184 provided:

    . . . "force" . . . must have been such as might reasonably be supposed sufficient to overcome resistance, taking into consideration the relative strength of the parties and other circumstances of the case.

    Section 21.02 provides that the intercourse is without the female's consent under circumstances in which the actor,

    (1) . . . compels her to submit or participate by force that overcomes such earnest resistance as might reasonably be expected under the circumstances.

3.  All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

4.  The unaggravated rape by threat circumstance proscribed by § 21.02(b)(2) reads: "he compels her to submit or participate by any threat, communicated by actions, words or deeds, that would prevent resistance by a woman of ordinary resolution, under the same or similar circumstances, because of a reasonable fear of harm."

5.  Vernon's Texas Civil Statutes, Article 5429b–2, §§ 2.01, 2.02, 2.04, 2.05, and 3.01–3.12.

acts that free and voluntary action which alone constitutes consent.

3) A *declaration of one's purpose* or intention to work injury to the person, property, or rights of another with a view of restraining such person's freedom of action.

In view of the provision in § 21.03(a)(2) that the "threat" made be one which "compels submission" of the victim,[6] the ordinary meanings of "threat" as recited above are particularly appropriate in the context of the statutes.

Finally, we may find direction in the statutory language of robbery proscriptions, as under both the old and new penal codes parts of the statutes are strikingly similar to those of "rape by threat" proscriptions. Prior law, Article 1408 entitled "Robbery," provided in part:

> If any person by assault, or violence, or by *putting in fear of life* or bodily injury, shall fraudulently take from the person . . . property with intent to appropriate the same to his own use, he shall be punished by confinement . . . for life, or for a term of not less than five years; * * *

As in rape, the new penal code divides the prior offense of robbery into a "simple" form and an aggravated form thereof; § 29.02 entitled "Robbery" now provides in relevant part:

> (a) A person commits an offense if, in the course of committing theft . . . and with the intent to obtain or maintain control of the property, he:
>
>    *    *    *    *    *    *
>
> (2) intentionally . . . *threatens or places another in fear of imminent bodily injury or death*.[7]

Consonant with all discussed to this point is the notion that a "threat" is (or surely includes) words or conduct which "place another in fear." Therefore, a review of this Court's construction of this phraseology in robbery proscriptions, both past and present, should prove instructive in our analysis.

## II. *Sufficiency of the Evidence*

In reviewing sufficiency of the evidence, it is well settled that the proof of record is to be viewed in a light most favorable to the jury's verdict; from this perspective, the question becomes: Does the evidence justify the jury's inference concerning the truth or existence of facts in issue? In framing the particular issue posed by the instant case in this manner, we are called upon to determine whether reasonable jurors would be justified in inferring from the facts adduced that appellant's victim submitted to the rape out of a just fear for her life or physical integrity as serious bodily injury is defined. As in all evidentiary sufficiency inquiries, we must view the appellant's conduct as a whole, considering all the facts and circumstances of the criminal episode, for events do not occur in a vacuum.[8] *Hanner v. State*, 572 S.W.2d 702 (Tex. Cr.App.1978). This proposition is fortified in the instant case by the explicit statutory command of §§ 21.02(b)(1) and (2), that the reasonableness of the victim's submission be viewed in light of the circumstances.[9] E. g., *Seaton v. State*, 564 S.W.2d 721 (Tex.Cr. App.1978); see also *Brown v. State*, 576 S.W.2d 820 (Tex.Cr.App.1978); *Johnson v. State*, 510 S.W.2d 944 (Tex.Cr.App.1974); *Winkle v. State*, 506 S.W.2d 891 (Tex.Cr.

---

6. See also the statutory proscription against "Terroristic Threats," V.T.C.A. Penal Code, § 22.07.

7. The Practice Commentary to § 29.02 states: As in prior law, the violence used or threatened must be *for the purpose of compelling acquiescence* to the theft *or of preventing or overcoming resistance* to the theft.

8. Facts and circumstances surrounding commission of offenses are considered to be so probative of the material issues involved at trial, that even when they constitute an extraneous criminal offense committed by the accused, they are generally admissible under the rationale that the value of showing the jury the context in which the criminal act occurred outweighs any prejudice to the accused that might attend such admission. *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972).

9. Aggravated rape, § 21.03(a) incorporates the requisites of § 21.02 by reference.

App.1974); *Jones v. State*, 505 S.W.2d 909 (Tex.Cr.App.1974); *Johnson v. State*, 449 S.W.2d 65 (Tex.Cr.App.1970); and old Articles 1184 and 1185.

The old code cases which emphasize the "impossibility" of laying down "fixed standards" by which it can be said that sufficient force, threats or the cogency of both existed in any particular case are many.[10] Rather, when reliance was had on threats, the test was stated to be:

Whatever is said or done must be as would operate upon the mind of the injured female to cause her to yield to the [accused] and must be sufficient to create a just fear of death or serious bodily injury.[11]

*Most v. State*, 386 S.W.2d 537 (Tex.Cr.App. 1965). See also *Jackson v. State*, 470 S.W.2d 201 (Tex.Cr.App.1971); *Longoria v. State*, 159 Tex.Cr.R. 529, 265 S.W.2d 826 (1954); *Diggles v. State*, 99 Tex.Cr.R. 288, 269 S.W. 88 (1925).

In construing the new code's requisites for aggravation by threats, this Court stated in *Childs v. State*, 547 S.W.2d 613, 615, n. 3 (Tex.Cr.App.1977):

* * * The object of the threat can be one or more persons, but the [complainant] is always one of the persons to whom the threat is communicated. If this communication compels her to submit to the sexual act, the prohibitions of the statute have been violated.

With consistency emphasis is placed on consideration of the totality of the circumstances in determining the actor's intent,

his communication of that intent to the victim, as well as the reasonableness of the victim's submission. "The appellant's intent is determined from his words, acts and conduct." *Jenke v. State*, 487 S.W.2d 347, 348 (Tex.Cr.App.1972); see also *Banks v. State*, 471 S.W.2d 811 (Tex.Cr.App.1971) and *Bailey v. State*, 139 Tex.Cr.R. 260, 139 S.W.2d 599 (Tex.Cr.App.1940).[12] In *Easley v. State*, 82 Tex.Cr.R. 238, 199 S.W. 476 (1917), this Court considered the sufficiency of the evidence of a robbery case in which the defendant had merely walked along with the victim holding an otherwise undescribed walking stick (which was never raised by the defendant), and simply stated "I want your pocketbook."

. . . The *"putting in fear"* which is referred to in the statute *must*, to support a conviction of robbery, be sustained by evidence of *acts or conduct or words or circumstances reasonably calculated to effect* that *result.*

\* \* \* \* \* \*

"All the authorities agree that to constitute the crime of robbery there must be violence, or *intimidation of such a character as that the injured party is 'put in fear.'* The fear must be of such a nature *as in reason and common experience* is *likely* to *induce* a person to part with his property *against his will.*"

*Easley* at 478; see also *Peebles v. State*, 138 Tex.Cr.R. 55, 134 S.W.2d 298 (1939); *Cranford v. State*, 377 S.W.2d 957 (Tex.Cr.App. 1964); *Jones v. State*, 467 S.W.2d 453 (Tex.Cr.App.1971); *Emerson v. State*, 476

---

10. See, e. g. *Zamora v. State*, 449 S.W.2d 43 (Tex.Cr.App.1969); *Bundren v. State*, 152 Tex. Cr.R. 45, 211 S.W.2d 197 (1948); *Jackson v. State*, 470 S.W.2d 201 (Tex.Cr.App.1971); *Most v. State*, 386 S.W.2d 537 (Tex.Cr.App.1965); *Diggles v. State*, 99 Tex.Cr.R. 288, 269 S.W. 88 (1925); *West v. State*, 152 Tex.Cr.R. 9, 211 S.W.2d 200 (1948); *Woods v. State*, 83 Tex. Cr.R. 332, 203 S.W. 54 (1918). See also *Brown v. State*, supra.

11. "The statute does not specify how, by or through what means the threats in a rape case must be made—that is, *whether by some oral statement,* written statement, or acts done. All the statute does in defining the term 'threat' is to specify the effect and not the method or

manner employed in making such threats." *Most*, supra, at 539, cited with approval in *Rogers v. State*, 575 S.W.2d 555 (Tex.Cr.App. 1979). See also *Watson v. State*, 548 S.W.2d 676 (Tex.Cr.App.1977).

12. In *Griffin v. State*, 514 S.W.2d 278, 280 (Tex. Cr.App.1974), an assault with intent to commit rape case, this Court stated:

The intent or purpose of appellant must be determined by the trier of the facts from appellant's conduct, in light of the facts and circumstances shown. In doing so, the trier of facts has the right and duty to consider the experience of mankind.

S.W.2d 686 (Tex.Cr.App.1972); *Jackson v. State*, 491 S.W.2d 438 (Tex.Cr.App.1973); *Crawford v. State*, 509 S.W.2d 582 (Tex.Cr.App.1974); *Green v. State*, 567 S.W.2d 211 (Tex.Cr.App.1978).

In *Alsobrook v. State*, 134 Tex.Cr. 322, 115 S.W.2d 668, 671 (1938), it was stated: "The degree of force is immaterial as long as it is sufficient to compel one to part with his property." In *Lewis v. State*, 481 S.W.2d 822, 824 (Tex.Cr.App.1972), the rule in *Alsobrook* was restated:

> . . . Appellant claims that the evidence was insufficient to prove robbery by assault. In *Alsobrook* [supra] this Court held that the *degree of force used is immaterial so long as it amounts to* some sort of assault, violence, or *putting in fear [of death* or bodily injury], *and is sufficient to compel one to part with his property.* Here, the witness testified that he was in fear of his life . . . due to the fact that appellant and his co-defendant had a hammer and told him it was a "hijack". Further, that the co-defendant had the hammer . . . and drew it back . . . .. This evidence is sufficient to show a robbery by assault.

In *Jackson v. State*, 491 S.W.2d 438 (Tex.Cr.App.1973), the facts of which are different only in the respect that they are less brutal than those presented by the instant case, the evidence was found to be sufficient. Suffice it to say that Jackson was tried for three robberies which he accomplished against female victims, without a weapon, by chasing, grabbing, pushing and beating in various combinations. Only in the third instance did he tell his victim "he would kill [her] 'God damn ass'," if she screamed. In the second and third instances, the opinion points out, the *victims testified* they were "in fear of [their lives] and serious bodily injury." After quoting the rule of *Alsobrook*, supra, in its expanded form per *Lewis*, supra, this Court held:

The evidence here shows that in each case there was, antecedent to the taking of the purse, *actual violence* which was *sufficient to place each complaining witness in fear of her life and serious bodily injury.* The evidence further shows that the violence was sufficient to *compel* each complaining witness to part with her purse against her will. The evidence is therefore sufficient to support a conviction for the offense of robbery by assault.

In *Carrier v. State*, 159 Tex.Cr.R. 421, 264 S.W.2d 728 (1954) a robbery was accomplished against a tubercular 62 year old man by literally incapacitating him with force. A ground on appeal complained of the admission of a statement the defendant made to the effect that he was an ex-convict and afraid of neither the police nor the electric chair. This Court held that such statement by the robber was "surely . . *calculated* to place his victim in fear of him."

In *Horn v. State*, 89 Tex.Cr.R. 220, 230 S.W. 693, 694–695 (Tex.Cr.App.1921) a man and a woman were robbed by two masked men. The male victim claimed he saw gun handles sticking out of the pockets of the robbers; the Court held:

> [T]he "fear" required by the law is present. There is no question that such feeling existed *in the mind of [the victim].* There was *no mistaking the purpose of the masked men.* The exercise of the slightest judgment would dictate the very course pursued by the victim in this case . . . .[13]

In *Ramiriz v. State*, 465 S.W.2d 945 (Tex.Cr.App.1971) the robber accomplished his deed by posing as a police officer. This Court concluded at 946:

> It is clear from the State's evidence the appellant made an *unlawful assault* upon [the victim] by *grabbing him, spinning him and shaking him down,* and that [the victim] *was put in fear of his life or serious bodily injury* and the property

---

13. "Why did [the victim] give up his property, including a thousand dollar diamond? Was it because he liked appellant and [his co-defendant], and wanted to display his generosity? *He did not know them*; they were masked. *Or was it because of their appearance under the circumstances, and their conduct* after they got on the scene?" *Horn*, supra, at 694.

alleged [a knife, jacket and tape recorder] was taken. * * * The *items* alleged were *taken* from the complaining witness *without his consent.* They *were not given to the appellant willingly* under the impression that he was a police officer. Another "police officer impersonation" case is *McCormick v. State*, 26 Tex.App. 678, 9 S.W. 277 (1886). Stated the Court at 278–279:

> The robbery was *at night.* [The victim] was a *stranger in the city*, and, when accosted in the manner shown in the record, *it was reasonable and quite natural for him to be alarmed.* He was told at the outset to throw up his hands. Being thus suddenly accosted, and ordered to throw up his hands, *it was natural for him to become alarmed*, and while thus situated the money was taken. *We do not doubt that this was the matured plan of the defendant,—the method preconceived by which to effect the robbery.*

Compare *Berry v. State*, 579 S.W.2d 487 (Tex.Cr.App.1979). The evidence in *McCormick* was characterized by the Court as "clear, convincing, and . . . overwhelming."

In *Cranford v. State*, 377 S.W.2d 957, 959 (Tex.Cr.App.1964), this Court stated in upholding the conviction:

> The fear must arise from the conduct of the accused, however, rather than the mere temperamental timidity of the victim.

A case illustrative of the impropriety of basing a finding of sufficient "fear" solely on the complainant's testimony is *Etzler v. State*, 143 Tex.Cr.R. 327, 158 S.W.2d 495 (1942). The victim testified at trial that he was *not* afraid of serious bodily injury or death and did not feel he was in danger. In affirming the conviction, the Court held that the complainant's statement was inconsistent with his conduct [giving up $14.00 and his car] during the transaction.

> Where the indictment alleges the robbery to have been effected by fear of life [etc.] . . . ., the burden is of course on the state to prove it; but *"fear" in this connection* does not mean a panic or fright to the extent of losing one's senses or control. *The party robbed may not be "scared" to the extent that he [was] hysterical.* If he feels that if he complies with the request of the robber to surrender his property, there is no danger imminent to him, in a sense he might not be scared; yet, *if under the circumstances and conditions surrounding the transaction* he has a *reasonable belief* that he *may suffer injury unless* he does *comply* with the . . . request, *the "fear" required by the law is present.*

*Etzler* at 496 (quoting *Horn*, supra).

It is apparent that the members of this Court are in agreement that a threat can be communicated by actions and deeds as well as by words. It is concern for abolition of the statutory distinction between rape by force and aggravated rape by threats (should we interpret the instant brutal physical assault to constitute a threat of death) which leads some judges to believe the Legislature intended that the threat be made verbally or by exhibition of a weapon. Though the sufficiency of evidence to constitute rape is not at issue in this case, it is the crucial turning point in the rationale of the plurality opinion and consequently bears address.

Comments to the Model Penal Code, § 207.4 entitled "Rape and Related Offenses," Draft No. 4, are illuminative of the policy considerations advanced by the division of rape conduct into a "simple' form and an "aggravated" form:

> First degree rape is restricted . . . to cases where the victim *suffers serious physical injury or where* in effect *she is attacked by a stranger.*[110] These circum-

> [110] * * *

> *Ploscowe, Sex and the Law* at 165 points out that it is the man who springs upon a woman unknown to him who is the *truly dangerous and most feared rapist.*

> stances mark the most brutal assaults, and, in addition, furnish some objective indication in support of the complainant's testimony that she [was compelled to submit against her will]. The community's

sense of insecurity (and consequently the demand for retributive justice) is especially sharp in relation to the character who lurks on the highway or alley to assault whatever woman passes, or who commits rape in the course of burglary. *Id.* § 207.4(5) "Aggravated Rape."

The state of mind of the victim, while a crucial and relevant consideration, will never be sufficient alone to support a jury finding for aggravation; to impose punishment within the first degree felony range it is appropriate that the evidence "furnish some *objective indication in support of* the *complainant's testimony* of non-consent," and further furnish proof that the rape was one which is "most brutal or shocking, evincing the most dangerous aberration of character and threat to public security." See Comments, *ante.* Understandably, state legislators and judges are "reluctant to permit a jury to convict on a woman's testimony that she was frightened into submission in circumstances where most women would not have been intimidated."[14] Comments, § 207.4(6) entitled "Compulsion by Force or Threat" at 247.

Unaggravated rapes by force—consistent with policy expressed in the Model Penal Code Comments, *ante,*—will frequently oc-cur in a context where the rapist and his victim are acquainted if not to some degree sexually intimate. The old code case, *Miller v. State*, 129 Tex.Cr.R. 217, 86 S.W.2d 460 (1935), presents a fact situation exemplifying what would be an unaggravated rape by force under the new code. The appellant and the victim (who apparently engaged to be married and had engaged in "petting" short of intercourse) drove to the lake one afternoon. According to complainant, appellant Miller told her he wanted to have sex and would throw her into the lake if she refused. She got free from his hold on her, but he grabbed her, crossed her hands behind her back and shoved her into the car, pinning her hands under her. Appellant cursed her and told her he "ought to kill her." The victim kicked until she was exhausted and the rape was accomplished. The victim did not immediately report the incident because she decided to kill appellant herself. Ultimately, Miller was convicted and sentenced to eight years.[15]

Likewise, in *Billings v. State*, 131 Tex. Cr.R. 479, 100 S.W.2d 357 (1937), the victim met her rapist at a night club, danced with him until midnight, and accepted his offer to take her and a friend home. After taking complainant's friend home the appellant drove to the country, stopped, and attempt-

14. Even so, history demonstrates that attitudes have moderated and suggests a continuing evolution is in progress. As the Practice Commentary following Section 21.02, supra, recalls with respect to that "force which negates consent:" "At one time Texas required that the female exert the utmost resistance of which she was capable, *Perez v. State*, 94 S.W. 1036 ([Tex.]Cr. App.1906), but later cases required only that the resistance be sufficient under the circumstances," mentioning, e. g., "even fear that a 'scene' would psychologically damage children present," as in *Torbert v. State*, 166 Tex.Cr.R. 311, 313 S.W.2d 303 (1958). As to threats, it is noted although old Article 1185 spoke of fear of death or great bodily harm, it was not so applied in cases such as *Most v. State*, 386 S.W.2d 537 (Tex.Cr.App.1965), where fear for the safety and mental health of a child of the victim was deemed a sufficient threat.

Force used and threats made to effect a robbery are enough to prove nonconsensual submission to the sexual intercourse that followed on demand. *DeVonish v. State*, 500 S.W.2d 800 (Tex.Cr.App.1973). So also a rape might be accomplished by force or threats directed to some loss or damage other than personal physical injury, such as torching one's home, destroying a prized work of art, maiming a favorite household pet and the like.

While today it may not be unreasonable for a woman to submit to or participate in rape in similar circumstances "because of lear of harm," whether she was "compelled" to do so out of fear of "serious bodily injury or death to be imminently inflicted on anyone" may well depend more on existence of objective indicators than her asserted fear.

15. The punishment assessed by a jury in this old code case is illustrative of justification for the legislative notion of providing in the new code a range of punishment for unaggravated rape, on the one hand, and a higher bracket for aggravated rape, on the other. Compare *Killingsworth v. State*, 154 Tex.Cr.R. 223, 226 S.W.2d 456 (1950) in which a jury assessed twenty years for a rape by force that consisted only of initially holding her neck and then pushing the body of prosecutrix up against a pickup truck.

ed to fondle complainant who jumped out of the car and ran. Appellant grabbed her, forced her back into the car and told her "[he'd] 'beat hell out of her' . . . if she hollered." Appellant finally said he would take her home and drove off, but stopped again and attempted sex. Failing that, he drove to a "tourist court" for a room. The victim jumped out and ran to a cabin, but appellant again forced her into the car, drove on a bit then stopped in a field and forcibly raped her.

More modern versions of this scenario might involve an infinite variety of settings and situations as opportunities and occasions for chance encounters between male and female become more commonplace. Doubtless the strength of the average adult male will most frequently be sufficient to effect an otherwise non-violent rape by force. Indeed, the "relative strength of the parties" and "relative condition of the parties as to health (and) strength" were formerly specific considerations [16] mandated by Article 1184 and 1185, supra.[17] Drafters of the new code surely intended such matters be covered by the more general phraseology directing consideration of the "circumstances."

It seems particularly premature for this Court at this time to fashion a rule restricting requisites of sufficiency of evidence from situations extant in six or seven aggravated rape by threat cases decided to date. For purposes of this case and presently, unless experience demonstrated it to be inequitable, the rule that should be applied in such cases is one fashioned from the principles already settled in the jurisprudence of this State that we have reviewed and discussed *ante*. That is, force constitutes a threat of death or serious bodily injury to be imminently inflicted when the fact finder believes and finds from the evi-

dence beyond a reasonable doubt that the force used exceeded that amount which overcomes such earnest resistance as might reasonably be expected under the circumstances to the degree that, together with all other objective facts and circumstances surrounding submission to the rape, the force justifiably constitutes in the mind of the complaint a threat of death or serious bodily injury to be imminently inflicted upon her.

Reviewing each case with this rule, this Court will simply be following the current dictates of legislatively expressed public policy derived from long experience with the subject. To return to yesterday's ills is to reinstate its inequities. We are fully capable of implementing clear legislative intent and purpose by drawing on those parallel definitions and concepts in the earlier laws that remain viable today.

### III. *Application to the Instant Case*

In the instant case, the complaint left for working the hospital night shift at approximately 10:15 p. m. and stopped at the Post Office to mail a letter. On returning to her car she unlocked it, looked in the back seat, got in, put on her seat belt and drove away. Upon stopping at a stop sign she heard a noise in the rear section of her station wagon and a hand came over her shoulder, grabbing her face. Appellant stepped through the console into the front passenger seat; it was then that he first hit the complainant in the face, full force with his first doubled, bringing "stars" to her eyes. He also hit her in the chest and breasts. She began to bleed from her nose and mouth. He continued to hit her until she had pulled into an isolated overgrown road of gravel and shell responding to his directions and the continuing assault. After the car was parked, appellant dragged the complainant by the arm across the front seats and out the passenger side door.

---

16. In *Lewis v. State*, 154 Tex.Cr.R. 329, 226 S.W.2d 861, 864 (1950), the Court observed:

    A woman whose physical strength equals or is greater than the strength of her attacker would be expected to use that strength.
    * * * It is measured as much by the judgment one is capable of exercising as by physical strength.

17. Interesting to note also is that under the old code an assault "committed by an adult male upon the person of an adult female" was, by virtue of just those circumstances, aggravated. Article 1147(9).

Appellant pushed the complainant into the weeds which were about three feet tall, pulled off one of her shoes and threw it. She tried to get up; appellant grabbed her and walked her down the road where he pushed her down again, grabbed the pants legs of her nurse's uniform, pulled her pants off and threw them. He then jerked off her girdle, hose and underpants, jerked her back up and ordered her to take off her top. When she refused he spun her around, unzipped her top, took it off and ripped off her bra, pushing her into the gravel and weeds again. He then got on top of her and inserted his penis into her vagina. During the intercourse appellant asked the complainant whether she was enjoying it. When she responded that she was not, appellant told her to kiss him. When she refused, appellant hit her again full force in the face. She finally kissed him on the cheek.

Appellant again asked complainant if she were enjoying the intercourse. When she said "no" this time, appellant pulled his penis out and told complainant to suck it. She told him there was "no way" because her mouth and lips were so sore and swollen. Appellant got up, grabbed complainant by the neck, pulled her up and told her to run down the gravel road or he would shoot her. She did run, and hid in the weeds for about five minutes; she then noticed another car behind her own down the road. She ran toward the car yelling and waving her arms but appellant intercepted her, grabbed her, told her to be quiet and threw her back into the weeds. The car pulled away.

Appellant started beating complainant again, telling her to give him the keys to her car. Her key chain had broken but she found the car key in the back seat and gave it to appellant. He then grabbed her by the ankle, dragged her out of the car and down the gravel road, naked, on her back. Again,

when he released her, he told her to run or he would kill her. She ran again, hid in the weeds and finally saw her car leave. She waited ten minutes more; she then found what she could of her clothing, went barefoot back to the Post Office and eventually found a phone to call her husband.

Complainant, a registered nurse, testified that she did not know whether appellant was going to kill her, but the possibility that he would was going through her mind during the entire episode.

Complainant's husband testified that when his wife reached him by phone she sounded hysterical and was unable to explain to him where she was. When he finally got to her, her face was so swollen he "could barely recognize her," and her blouse was spattered with blood. A Houston police officer testified that complainant "just looked battered" her face was so bruised and swollen. Another officer who found complainant's car wrecked, found inside a pair of white panty hose which had blood stains and seminal fluid on them. Photographs taken three days after the rape depicted complainant as being several pounds heavier than she in fact was, due to the continued swelling of her body as a result of appellant's assault.

A friend of appellant testified that appellant had bragged to him about hiding in complainant's car, raping her and threatening to kill her if she did not find the key to the car.

The opinions on original submission and rehearing describe the injuries suffered by complainant; these injuries surely serve as "objective indicators" that her submission was compelled by an excessively brutal assault. The facts of this case therefore fully support the jury's verdict that complainant's submission to this rape was compelled by appellant's threat of death.[18] It is clear

18. The record reflects that the jury deliberated 43 minutes before finding this nineteen year old appellant guilty of aggravated rape. A sworn motion for felony probation was before the jury on punishment, but after one hour of deliberation, the jury assessed punishment at life.

As reflected by the plurality and concurring opinions, five members of the Court have, in effect, substituted their respective judgments for the collective judgment of the jury which found each and every element of the offense of aggravated rape was proved beyond a reasona-

that appellant intended to and did communicate to complainant by his conduct, his intention to kill her or inflict serious bodily injury on her should she continue to struggle and refuse his commands. The excessively brutal physical attack on complainant revealed by this record exemplifies conduct which the Legislature intended to proscribe as a first degree felony should a jury so construe it to constitute a threat of serious bodily injury or death which compelled the complainant's submission, as those words are commonly understood. This Court should defer to that jury's judgment and leave their verdict undisturbed.

To the extent that *Rogers v. State*, 575 S.W.2d 555 (Tex.Cr.App.1979), may be read to require a verbal threat or the display of a weapon and excludes from the jury's considerations all facts and circumstances surrounding the entire criminal episode, it should be overruled.[19]

W. C. DAVIS, J., joins.

---

ble doubt. But, in concluding that the evidence is insufficient to support the conviction, the rule fashioned by the plurality opinion is expressly rejected by the concurring opinion. Thus, the Court must continue to determine sufficiency of the evidence to convict on a case-by-case basis.

**19.** Irrespective of the correctness of the reversal in *Rogers* the justification for that result is palliative and should be overruled. It should be observed that Rogers could clearly, under the facts of the case, have been convicted of burglary of a habitation, a first degree felony. In reversing *Rogers'* and *Rucker's* aggravated rape convictions, we should consider the violence we do to the Penal Code's specified intent and purpose that we construe it in such a way "to prescribe penalties that are proportionate to the seriousness of offenses." See § 1.02(3), supra.