Donald Christopher **JACKSON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 43688.

Court of Criminal Appeals of Texas.

June 16, 1971.

Rehearing Denied Sept. 16, 1971.

John G. Tucker, Everett Lord, Beaumont, for appellant, by appointment.

W. C. Lindsey, Dist. Atty., and John R. DeWitt, Asst. Dist. Atty., Beaumont, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for rape; the jury assessed the punishment at life.

The State's evidence shows that on the evening of January 23, 1969, the appellant Jackson, Freddie Lockett, and Walter Sammy Goffney, were rabbit hunting in a wooded area near Interstate Highway 10 in Beaumont. They were wearing headlights and carrying shotguns and had been drinking heavily throughout the evening. They walked past a parked car occupied by the prosecutrix and her boyfriend. Appellant came back to the car and ordered the occupants to roll down the window. When they refused, he pointed his shotgun at them and told them that he would kill them if they did not get out. When they got out of the car, the appellant told them something to this effect, "I have been hearing that you white people don't like Negroes. You white mother f———. Let's walk down this trail. I am going to show you Whites what a Negro can do." Because

they were not walking fast enough he said, "Go on down the trail and walk faster or I'll kill you all." When the prosecutrix tried to talk to her boyfriend the appellant told them, "Shut up you mother f——— or I'll kill you."

Goffney and Lockett were observing this. Lockett told Goffney that he believed what the appellant was doing was "crazy." He then ran off and refused to participate in the incident.

They walked down a trail away from the highway. They forced the boyfriend to kneel and the appellant told Goffney, "If he gets up shoot him." He then pulled the prosecutrix by her hair and threw her to the ground and said, "You know what I am going to do to you?" When she answered "No" he said, "I am going to f— you." She began screaming, and the appellant hit her and beat her. The boyfriend got up and fought them; they beat and kicked him until he was unconscious.

During this scuffle, prosecutrix was able to get up and she tried to plead with Goffney, telling him that he seemed more sensible than the appellant, and Goffney replied, "That's why I am holding the guns." When the appellant was finished fighting with the boyfriend, he pushed prosecutrix to the ground again and started tearing her clothes off. He told her that he would kill her if she did not cooperate. The appellant proceeded to have sexual intercourse with her, while Goffney watched. Whenever she tried to resist, he told her that he would kill her, and told her, "What a baby this will make." Goffney then asked her, "Can I have some when my friend gets through?" When Jackson finished, Goffney got on top of her, but was unable to have intercourse. He forced her to manipulate his sexual organ in order to obtain an erection, but was still unsuccessful. Meanwhile, the appellant took the boyfriend's billfold and stole about $30. Goffney and the appellant began fondling her at the same time and the appellant told Goffney that he would show Goffney how to do it and he raped her again.

When they were finished, the appellant asked her if she liked him and because she was scared she said "Yes" and offered to meet him again and gave him a false name, address, and telephone number.

They forced her into the car and rode off. After driving for a while they stopped the car, removed the stereo tape player, and took $12 from prosecutrix's billfold, then ran off.

Prosecutrix went home and told her mother that she had been raped and went to a hospital.

The appellant presents eleven grounds of error.

■ First, he contends that certain evidence was improperly admitted because it was seized at the time of his arrest, and the affidavit upon which the warrant for his arrest was issued was insufficient.

The affidavit was as follows:

"My name is G. C. Breaux, and I am employed by the City of Beaumont, Police Department, as a Detective.

"On January 24, 1969, at about 1:20 a. m. my partner, H. P. Engstrom and I received a call to see a party at Paul Poe's Enco Service Station on IH–10. We arrived and talked to ——————— (Injured party). He advised that he and his girl had been parked on the Southwest Side of IH–10 and 3 negro males came up to the car and pointed a shotgun at them and took them off into the woods and beat him and raped his girl, ——————— (prosecutrix). While with ——————— (boyfriend) there was another call put out having to do with a Rape Victim at 3409 Corley St. ——— (Boyfriend) stated this was the home of ——————— (prosecutrix). We went to the home of ——————— (prosecutrix) and talked with her and her mother carried her to the hospital to be checked. She was released from the hospital and came to the Police Station. During this time a man fitting the description given to us by the ——————— (boyfriend) and ——————— (prosecutrix) victims was arrested. This was a boy by the name of Walter Sammy Goffney. Found on Goffney at the time of his arrest was *a* Allstate Envelope with the name of ——————— (prosecutrix). ——————— (Prosecutrix) told us that she had given the 2 negro men an envelope with her name on it but had not put the correct name or address but would recognize the handwriting. A group of 4 pictures were obtained and shown to both ——————— (boyfriend) and ——————— (prosecutrix) and ——————— (prosecutrix) picked picture #20641, dated May 24, 1966, as being the party that had raped her on January 24, 1969.

"Based on the Identification of ——————— (prosecutrix) and the fact that Goffney had the envelope ——————— (prosecutrix) had written on in the car with the 2 men I believe and have good reason to believe that Walter Sammy Goffney and Donald Christopher Jackson, committed the offense of Rape on ——————— (prosecutrix) and request that the D.A.'s office accept my complaint and issue a warrant for the arrest of Donald Christopher Jackson and Walter Sammy Goffney, for Rape."

The appellant contends that there are no facts stated in the affidavit referring to or identifying or connecting him with the offense or with any of the facts or matters stated therein. The affidavit states that his (affiant's) belief was based on the identification by the prosecutrix and the fact that Goffney had the envelope she had written on. The averments that the prosecutrix identified a picture of the individual who raped her and that the officer's belief was based on her identification lead to the clear conclusion that she identified the appellant's picture. Thus, it was shown that the witness was reliable because she was the victim of the crime; and the underlying circumstances of why she knew the appellant was her assailant were shown. The

Aguilar requirements were met. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723. The affidavit is sufficient for a magistrate to conclude that there is probable cause that the appellant committed the offense. See: Whitely v. Warden of Wyoming Pen., 10 Cir., 416 F.2d 36.

The appellant's first ground of error is overruled.

◼ Secondly, the appellant contends that the indictment was defective because an investigator for the district attorney's office was the sole witness before the Grand Jury, and his testimony was based solely upon hearsay obtained from the actual witness to the crime. The proceedings of the Grand Jury are secret. Art. 20.02, Vernon's Ann.C.C.P. and breach of this secrecy is a criminal offense. Art. 314, Vernon's Ann. Penal Code. The sufficiency of the evidence upon which the Grand Jury returned the indictment is not a proper matter for the court to inquire into, and the court did not err in overruling the appellant's motion to dismiss the indictment. 30 Tex.Jur.2d 537, Sec. 3.

The appellant's second ground of error is overruled.

◼ The appellant's third ground of error complains that he was deprived of the rights of confrontation and cross-examination when his co-indictee, Walter Sammy Goffney, was exhibited before the court and identified by witnesses as the appellant's companion and accomplice. It is his contention that Goffney's silence and failure to deny commission of the acts was tantamount to a confession and therefore within the contemplation of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, and Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100. In this case, Goffney was merely brought into the courtroom and identified by Lockett. There is not even an implication of a confession and the cases cited by the appellant do not apply. The identity of an individual who participated in the commission of the offense is relevant to the case and was properly admitted.

The appellant's third ground of error is overruled. .

The appellant's fourth, fifth, sixth, seventh and eighth grounds of error complain of the court's charge.

◼ The fourth ground complains of the words, "by having carnal knowledge of her against her will and without her consent by the use of threats, and the threats used, if any, must have been such as *might* reasonably have created in the mind of said ————— (prosecutrix) a just fear of death or great bodily harm to her, * * *" The appellant contends that the word "might" allowed the jury to convict him on surmise that the threats made by the appellant created a fear of death or great bodily injury to the prosecutrix.

The fifth ground complains of the court's definition of "without her consent." The court gave the following definition:

"In connection with the term 'without her consent, as used herein, you are further instructed that any consent of ————— (prosecutrix) obtained solely and entirely by the use of threats, such as might reasonably create a just fear of death or great bodily harm, in view of the relative condition of the parties as to health, strength, and other circumstances of the case, would not constitute actual consent, and carnal knowledge obtained by the use of such threats, if any, would not be secured with her consent, but would be without the consent of the woman assaulted."

He contends that the use of the word "might" allowed the jury to speculate as to whether any consent was given and to resolve the issue against the appellant without first having to find such fact beyond a reasonable doubt that such threats, if any, actually did create a just fear of death or great bodily harm.

The sixth ground complains because the jury was not instructed that before the appellant could be convicted of rape by threats, it must be established beyond a reasonable doubt that the complaining witness believed such threats, if any.

The eighth ground of error complains because the court instructed the jury to convict the appellant if it found that the offense was committed by force or threats and failed to instruct the jury that it must also find that the threats, if any, must have been believed by the prosecutrix. He alleges that this allowed the jury to convict if it found that the threats might have created a fear of death or serious bodily injury, resulting in a conviction based on speculation.

The charge given in this case is based on the one set out in Section 1954.1 of Volume IV of Branch's Annotated Penal Code. See also: Willson's Texas Criminal Forms, p. 318, Sec. 526. The definitions are the same as set out in Articles 1184 and 1185 of the Penal Code. We perceive no error in the court's charge to the jury. See: Finch v. State, 154 Tex.Cr.R. 158, 225 S.W.2d 861 and Gage v. State, 159 Tex. Cr.R. 336, 263 S.W.2d 553.

Appellant's fourth, fifth, sixth, seventh, and eighth grounds of error are overruled.

■ The appellant's ninth ground of error alleges error in the court's refusal to admit evidence that the complaining witness was not a virgin.

It is the appellant's position that the testimony of the complaining witness raises the issue of consent. We find nothing in the record to support this contention. On the contrary, the evidence shows that the rape was accomplished at the point of a shotgun and after a severe beating. Evidence of prior acts of intercourse would shed no light upon any contested issue in the case. Therefore, such evidence was inadmissible. Roper v. State, Tex.Cr.App., 375 S.W.2d 454; 4 Branch's Ann.Penal Code 287, Sec. 1960. Also, "when the only

purpose is to weaken the testimony of the State as to want of consent, proof of specific instances of unchastity, except with the defendant, is not admissible." 4 Branch's Ann.Penal Code 287, Sec. 1960.

The appellant's ninth ground of error is overruled.

■ The appellant's tenth ground of error complains of the trial court's refusal to allow the introduction of evidence that the prosecutrix had called her personal physician "to ask him if it was necessary for you to tell the truth about certain facts" of her testimony. The appellant contends that this is relevant to the credibility of the witness. The record does not disclose the subject of the complaining witness's concern and there is no showing in the record that she did not tell the truth in her testimony. Nor is there an indication that she ever had any real intent to tell anything but the truth.

Particularly in view of the nature of this case and the inquiry into her sexual experience, apprehension and fear about her testimony on the part of the prosecutrix has no bearing on the credibility of her testimony.

The appellant's tenth ground of error is overruled.

■ The appellant's eleventh ground of error challenges the prosecutrix's in-court identification of the appellant. Four photographs were shown to the prosecutrix. We have examined those photographs and find that none of the individuals pictured are especially distinctive from the others.

The record indicates that the prosecutrix had ample opportunity to observe the appellant during the period she was with him. He raped her twice and fondled and generally abused her over a considerable period of time. After the rape was completed, she was taken back to the car and spent some time in it, seated between the appellant and Goffney. The facts of this case are similar to the facts in Smith v. State,

Tex.Cr.App., 459 S.W.2d 642. Clearly, the display of photographs was not "so impermissibly suggestive as to give rise to a very substantial likelihood or irreparable misidentification." See: Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L. Ed.2d 1247; Thames v. State, Tex.Cr.App., 453 S.W.2d 495.

The appellant's eleventh ground of error is overruled.

There being no reversible error, the judgment is affirmed.