# 1562-15

No. _____

ORIGINAL

Court of Criminal Appeals of Texas

---

Mark Eugene Engle, Appellant

Vs.

The State of Texas, Apellee

RECEIVED IN
COURT OF CRIMINAL APPEALS

DEC 02 2015

Abel Acosta, Clerk

---

Petition for Discretionary Review

From the 6th Court of Appeals

In Appellate Case No: 06-14-00239-CR

FILED IN
COURT OF CRIMINAL APPEALS

DEC 02 2015

Abel Acosta, Clerk

---

Petition for Appellant

---

Honarable Justices:

Comes now the Appellant and submits this PDR pursuant to the provisions of the Texas Rules of Appellate Procedure in support of his request for the judgement of the conviction to be overturned.

(1)

# TABLE OF CONTENTS

Page

Index of Authorities _____ 3

Statement Regarding oral Argument _____ 4

Statement of the Case _____ 5

Statement of Procedural History _____ 6

Grounds for Review _____ 7

Argument with Authorities _____ 8-10

Prayer _____ 11

Appendix _____ 13

Certificate of Service & Declaration _____ 12

# Index of Authorities

Page 9

**Federal Cases**

Groh v Ramirez 540 US. 551 (2004) _____

**State Cases**

Green v State 872 S.W.2d 717,721 (TexCrimApp 1994) _____ 8
Pham v State 324 S.W.3d. 869,874 (Tex App-Houston[14th Dist] pet ref'd) 8
Rios v State 901 S.W.2d 794,706 (Tex App-San Antonio 1995 no pet.)___ 9
Tijerina v State 334 S.W.3d 825,835 (Tex App-Amarillo 2011 pet ref'd) 8
State v Cullen 195 W.W.3d 696,700 (Tex Crim App 2006) _____ 8
State v Daugherty 931 S.W.2d 268,270 (Tex Crim App 1996) ._____ 9

**State Statutes**

TRAP 44.2(a) Constitutional Error _____ 8
TRAP 44.4(a) Remedial Error _____ 8

## Statement Regarding Oral Argument

Oral Argument is requested to help the court understand the significance of the Abuse of Discretion, the probable cause findings, and the preservation of issues for Appellate Review. Among other things, also the Violation of the Appellants rights under the 4th Ammendment to the U.S. Constitution and the Texas Constitution Article 1 sec 9.

(4)

## STATEMENT OF THE CASE

This is an appeal of and sentence in criminal case from the 354th Judicial District, in Hunt County, Texas. Appellant was convicted Manufacturing and Delivery of a Controlled Substance Penalty Group 1 More than Four grams but less than 200 grams. After Appellant's motion to supress the evidence was denied by the trial court, Appellant Plead Guilty. Appellant was assessed a sentence of Life Imprisonment on October 1, 2014 by a Jury. Notice of Appeal was given on October 3, 2014. The clerk's record was filed February 5th, 2015. The reporter's record was filed on April 29th, 2015.

(5)

# PROCEDURAL HISTORY

(1) Opinion was handed down by the 6th Court of Appeals on **3rd** day of **November**, 2015.

(2) Motion for Rehearing was filed Pro Se on *12th* day of *Nov.* 2015.

(3) Motion for Rehearing was disposed/overruled on *17th* day of *Nov.* .2015.

(6)

## GROUNDS FOR REVIEW

1. Incomplete record denied the Appellant a proper review. – Motion for Rehearing.

2. Court of Appeals failed to apply the proper standard under Texas Rules of Appellate Procedure when there is a 4th Ammendment violation.

3. Standing was established as the contraband was removed from a personal safe. RR vol 22 States Exhibit No. 7

4. Affidavit for Search Warrant was sealed at the time of service and did not travel with the Search Warrant. RR vol 22 Joint Exhibit no. 1.

5. Search Warrant is ªfacially invalidª as it fails to particularly describe the place to be searched, and the persons or things to be seized. RR vol 22 Joint Exhibit No. 2.

6. Examining Trial Feb. 4th, 2013, Order from Examining Trial signed April 8th 2013 of No Probable Cause for the specific offense of Sexual Assault. Now see CR page 90. Is this abuse of discretion?

## ARGUMENT WITH AUTHORITIES

Texas Rules of Appellate Procedure 44.4(a) Remediable Error of the Trial Court. The Record is Incomplete. All hearings and rulings and orders Pre-Indictment have been left out. Green v State 872 S.W.2d 717,721 (Tex Crim App 1994) "An examining trial ...is arguably a critical stage for purposes of Sixth Amendment analysis." The judge signed a final order of No Probable Cause of the specific offense that the Court of Appeals continues to prevail on as it tries to keep this Invalid Affidavit for Search Warrant alive. order signed April 8th, 2013.

State v Cullen 195 S.W.3d 696,700 (Tex Crim App 2006) "Because an Appellate Court's review of a Trial Court's ruling is restricted by an inadequate record of the basis for the Trial Court's ruling, we find it necessary to require a Trial Court to express its findings of the fact and conclusions of law when requested by the losing party." If the court of appeals would have had a complete record of all proceedings in this case, Writ #07259, Cause No. 29110, the outcome would have been different.

Texas Rules of Appellate Procedure 44.2(a) Constitutional Violation

Court of Appels errored when it did not consider the full 4th Amendment to the Constitution of the Unitied States. The 4th Amendment states that no warrants shall be issued without 3 things - Probable Cause, Oath or Affirmation, and particularly describing the place to be searched and the persons or things to be seized.

The Court of Appeals has used the wrong analysis. Tijerina v State 334 S.W.3d 825,835 (Tex App - Amarillo 2011, pet ref'd) "We review the harm resulting from a trial court's erroneous denial of a motion to supress and subsequent admission of evidence obtained in violation of the [U.S. Const] Fourth Amendment under the constitutional standard of the [TRAP] 44.2(a). Under 44.2(a) "We evaluate the entire record in a neutral, impartial, and even-handed manner, not in the light most favorable to the prosectution." Pham v State 324 S.W.3d. 869, 874 (Tex Crim App - Houston [14th Dist] 2010 pet ref'd) "Standing is a question of law which we review de novo... only after a defendant has established standing

to complain may a court consider whether he suffered a substantive Fourth Amendment or Art.1 sec. 9 violation."
State v Daugherty 931 S.W.2d 268,270 (Tex Crim App 1996)
"The language of Art. 38.23 plainly does not accomadate a doctrine of inevitable discovery."
Nowhere in the Affidavit for Search Warrant is it spoken or suggested that a search of any locked boxes or safes would further the investigation. The officers removed the safe and took it inside the police station, beyond the scope of what the warrant allows. The terms 'locked boxes' and 'safes' in the warrant is over-broad. They do not particularly describe. Rios v State 901 S.W.2d. 704,706 (Tex App - San Antonio 1995, no pet.) "Both the Texas Constitution and [CCP] provide that a search warrant describe the place to be searched 'as near as may be'. A valid search warrant must contain a description of the place to be searched [¶1]. The description contained in the affidavit limits and controls the description contained in the warrant."

The search warrant is facially invalid. Exactly what our constitution is inteded to protect against. Warrants that are facially invalid and do not particularly describe can not be considered as anything but unreasonable.

Groh v Ramirez 540 U.S. 551 (2004) The Supreme Court Justice Stevens held that:
(1) Search warrant that utterly failed to describe the persons or things to be seized was invalid on its face, not withstanding that requisite particularized description was provided in search wqrrant application;
(2) residential search that was conducted pursuant to this facially invalid warrant could not be regarded as "reasonable" though items to be seized were described in search warrant application and though officers conducting search exercised restraint in application; and ◆
(3) agents who had prepared and executed warrant were not entitled to qualified immunity from liability.

"Search warrant that utterly failed to describe the persons or things to be seized was invalid on its face... and where application, having been sealed, did not accompany warrant. A facially invalid search warrant can not be cured by an incorporated affidavit. Especially when the affidavit was sealed."

(10)

## PRAYER

Appellant prays this Honorable Court will grant Discretionary
Review in this case and reverse the judgement of the Court of
Appeals and acquit him. Appellant further prays for all other
lawful relief to which he my be entitled, at law or in equity.

Sincerely Submitted,

Pro Se

Mark Eugene Engle
899 Fm 632
Kenedy, TX   78119
TDC#1958430

(11)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument was served on all parties to this petition by U.S. Postal Service on 24th day of November 2015.

Abel Acosta, Clerk
Court of Criminal Appeals
P.O. Box 12308
Capital Station
Austin, Texas 78711

_Mark Eugene Engle_
ProSe

## DECLARATION

i hereby swear under penalty of perjury that everything contained in this petition is true and correct to the best of my knowledge.

_Mark Eugene Engle_
Pro Se

Mark Eugene Engle

(12)

APPENDIX

---

Copy of Opinion



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00239-CR

MARK EUGENE ENGLE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 354th District Court
Hunt County, Texas
Trial Court No. 29,110

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

Mark Eugene Engle, charged with the manufacture or delivery of more than four grams but less than 200 grams of a controlled substance,[1] filed a motion to suppress evidence. After this motion to suppress was denied by the trial court, Engle entered a plea of guilty to the charge and submitted the issue of punishment to a Hunt County jury, which assessed a life sentence.[2] Engle has appealed, claiming that the trial court erred in its refusal to suppress the evidence obtained during a search after the issuance of a search warrant.

Engle attacks the search warrant on two fronts. First, he claims that the affidavit by Greenville Police Detective Felecia White, made in support of its issuance, was insufficient to establish probable cause that evidence of criminal activity would be found. Second, he claims White made her affidavit with reckless disregard for the truth, and, therefore, the warrant was invalid under *Franks v. Delaware*, 438 U.S. 154 (1978).[3] In his brief, although Engle questions why an alleged transient person's word would be sufficiently reliable to support the issuance of a search warrant and seems distressed that the affiant relies on hearsay upon hearsay in the affidavit

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (West 2010).

[2] The State alleged and proved two prior convictions for enhancement purposes.

[3] In making this claim, Engle seems to be relying on *Harris v. State*, 227 S.W.3d 83, 85 (Tex. Crim. App. 2007) (citing *Franks*, 438 U.S. at 155–56), which states, in part,

> Under *Franks*, a defendant who makes a substantial preliminary showing that a false statement was made in a warrant affidavit knowingly and intentionally, or with reckless disregard for the truth, may be entitled by the Fourth Amendment to a hearing, upon the defendant's request. This hearing is required only where the false statement is essential to the probable cause finding. If at the hearing the defendant establishes the allegation of perjury or reckless disregard by a preponderance of the evidence, the affidavit's false material is set aside. If the remaining content of the affidavit does not then still establish sufficient probable cause, the search warrant must be voided and the evidence resulting from that search excluded.

for the warrant, he neither points out any apparent falsehood in the affidavit nor specifically says why the relied-upon information would be incorrect.

## I. Contents of the Affidavit for Search Warrant

Part of Engle's complaint about Detective White's affidavit is that the facts attested to for the issuance of the search warrant came from secondhand knowledge she obtained from the report of another Greenville police officer. White's affidavit stated that she had reviewed a report generated by Greenville Police Corporal Victor Petrea. The relied-upon report described a meeting between Petrea and a woman, Jane Doe,[4] who told of coming to Greenville with a friend, Brooke Addington.[5] The report relates that Doe and Addington visited various friends in the city and eventually met up with a man named Mark. White's affidavit detailed the parties' actions, which led to Doe being alone in Mark's car with him at a particular truck stop, which was a location specified in the affidavit. Doe described a drug transaction in which Mark engaged, and then they drove toward Wolfe City in search of other drug deals. At this point, Doe described Mark pulling onto a back road, getting out of the car, opening Doe's door, strangling her, then binding her feet with a rope and her hands with a belt. According to Doe, Mark then took her to a Motel 6 in Greenville to what she believed was room number 123. Once in the room, although the report

---

[4]White's affidavit stated Jane Doe was a pseudonym, and she was assigned an identifying number. At the suppression hearing, Doe was identified by her given name. We will refer to her by the pseudonym used in the trial court. *See* TEX. CODE CRIM. PROC. ANN. art. 57.02 (West Supp. 2014).

[5]The affidavit suggests Addington and Doe were not from Greenville. Subsequent investigation showed the motel room had been registered to a Mark Engle, who was shown to have a white Saturn, matching the description of the car given by Doe, registered to an address in Fort Worth. Engle's driver's license showed an address in Watagua.

3

indicates that Mark sexually assaulted[6] Doe repeatedly "for several hours," the report does not detail the assaults. Petrea's report, as rendered in White's affidavit, related that Mark took Doe on another drug-selling trip and then returned to the motel to further sexually assault her, with Doe reporting that "this time was worse that [sic] the other time." *Id.* Doe went on to relate that Mark used a handheld video camera to film the rape, and she said that she also saw a computer with a lens mounted on it, leading her to believe that Mark was broadcasting the rape over the internet. Thereafter, Mark returned Doe to the car and went for another drive, during which she escaped when Mark stopped at a stop sign. Doe was rescued by police who were in a vehicle behind them.

White's affidavit also describes her meeting with Holly Robinson, the Executive Director of the Crisis Center of Northeast Texas. Robinson told White that she had met with Doe at a local hospital, where Doe described Engle's penile penetration of Doe's mouth, vagina, and anus while in the room of the motel, saying further that Mark had ejaculated upon multiple places of Doe's body. "Jane Doe told Holly Robinson that Mark had injected what Jane Doe believed to be Methamphetamine into the vagina of Jane Doe. Jane Doe told Holly Robinson that Mark had injected methamphetamine into Mark's neck and could not complete the injection so Mark made Jane Doe finish injecting the Methamphetamine into Mark's neck." Doe also described to Robinson that Engle had shaved her head with a set of face clippers. Doe described Mark as a forty-year-old white male "with a long tattoo of a naked woman on [his] back and skulls tattooed on [his] forearms."

---

[6]Although the initial investigation was into Doe's allegation of sexual assaults, a large amount of methamphetamine was found in Engle's car, a discovery which led to the indictment giving rise to the trial in this matter. There is nothing in the record filed with this Court to indicate that Engle was indicted for any of the sexual assault offenses.

4

Engle complains that affiant White relates information she gathered from an investigative report generated by Officer Petrea and from "facts she read from another officer." Engle does not consider the fact that information shared among law enforcement personnel can establish a basis for issuance of a warrant. "Observations reported to the affiant by other officers engaged in the investigation can constitute a reliable basis for issuing a warrant." *Gish v. State*, 606 S.W.2d 883, 886 (Tex. Crim. App. [Panel Op.] 1980) (citing *United States v. Ventresca*, 380 U.S. 102 (1965)). Engle claims that "one cannot discern from the four corners of the affidavit that entry in the hotel room will further the investigation." A close inspection of White's affidavit shows that she says her proposed search would look for "[i]tems utilized in the offense of Aggravated Sexual Assault offense [sic] consisting of body fluids, clothing items, towels, wash cloths, syringes, methamphetamine, video cameras, cellular telephones, 'SIM' cards for cellular telephones, computers, items used for bindings." Based on the reported sexual assaults described in White's affidavit, the items which the search warrant indicates would be the objects of the search would reasonably appear to be objects which could serve as evidence of the reported crimes.

Even though Engle does not point out what he claims to be false statements contained in the affidavit, he maintains that the affidavit does not establish the reliability of Doe. Because of this, Engle claims that Doe should not be accorded any more credibility than one would attribute to a confidential informant. Using that rationale, Engle claims (without proffering any authority for the position), that Doe's statements required corroboration as a predicate to its being used as the basis for a search warrant.

Engle avers in his brief that there is nothing in White's affidavit suggesting that the sexual acts related by Doe were committed without Doe's consent. We find this position belied by White's recitation that Doe told police Engle had bound her hands and her feet, took her to the motel, and sexually assaulted her as she remained bound. Engle took Doe out of the room, allegedly to sell drugs; he took her back to the room and sexually assaulted her again. These things hardly describe a willing participation by Doe in the sexual act. We also take Doe's description of Engle injecting methamphetamine into Doe's vagina and Engle's compelling Doe to assist him in injecting methamphetamine into his neck as evidence from which the reviewing magistrate could reasonably infer that the sexual activities were without Doe's consent.

## II.     The Law on Suppression and Warrants

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review, giving almost total deference to the trial court's determination of historical facts that turn on credibility and demeanor while reviewing de novo other application-of-law-to-fact issues. *See Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Appellate courts should also afford nearly total deference to trial court rulings on application-of-law-to-fact questions (also sometimes called mixed questions of law and fact) if the resolution of those ultimate questions turns on fact determinations, such as an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Appellate courts review mixed questions of law and fact not falling within this category on a de novo basis. *Id.* We must affirm the trial court's decision if it is correct on any theory of law that finds support in the record. *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002).

"Probable cause to support the issuance of a search warrant exists where the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued." *Cassias v. State*, 719 S.W.2d 585, 587 (Tex. Crim. App. 1986). Reviewing a magistrate's issuance of a search warrant, "we apply a highly deferential standard because of the constitutional preference for searches to be conducted pursuant to a warrant as opposed to a warrantless search. As long as the magistrate had a substantial basis for concluding that probable cause existed, we will uphold the magistrate's probable cause determination." *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011) (citations omitted). A reviewing court is "not to analyze the affidavit in a hyper-technical manner," but is to "'interpret the affidavit in a commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences. When in doubt, we defer to all reasonable inferences that the magistrate could have made.'" *Id.* (quoting *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007) (footnote omitted)).

We review a denial of a motion to suppress to determine if that denial represents an abuse of discretion. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). When we review a trial court's denial of a motion to suppress, we give "almost total deference to a trial court's express or implied determination of historical facts [while] review[ing] de novo the court's application of the law of search and seizure to those facts." *Id.* We "'view the evidence in the light most favorable to the trial court's ruling.'" *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (quoting *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006)).

7

"The law imposes no requirement that information provided by the victim of an offense be corroborated to support issuance of a warrant." *Jarnagin v. State*, 392 S.W.3d 223, 228 (Tex. App.—Amarillo 2012, no pet.). In *Jarnagan*, the Amarillo Court of Appeals found no abuse of discretion in a situation arising when the affidavit for search warrant related allegations made by the fourteen-year-old sexual assault complainant. The court found the trial court within its discretion to find the child's statements "sufficiently reliable to support a determination of probable cause." *Id.* Further, in *Jackson v. State*, 470 S.W.2d 201, 203 (Tex. Crim. App. 1971), the affiant was a police officer who had worked with the complainant, a rape victim. The victim identified Jackson's photograph as a photo of her attacker. The police officer's affidavit in support of the warrant stated that the affiant had good reason (based on the identification of Jackson in a photograph) to believe that Jackson had committed the offense. The Court of Criminal Appeals found that this photographic identification established the complainant's reliability "because she was the victim of the crime; and the underlying circumstances of why she knew the appellant was her assailant were shown." *Id.* We can find no reason that Doe's information tendered to police and set out in White's affidavit failed to sufficiently establish Doe's reliability in order to justify the issuance of the search warrant.

White's affidavit reflected the state of the investigation conducted by the Greenville Police Department, and it was proper for White to reference other officers' reports or investigations in her affidavit. Absent such practice, it may have been necessary for multiple affidavits from different affiants be obtained to support a single warrant. The four corners of the affidavit establish probable cause to believe at least one sexual assault occurred in the motel room described in the

affidavit. There was an indication that neither Doe nor her attacker were residents of the Greenville area. Even so, the trial court was within its discretion to find probable cause in the affidavit's four corners.

## III.   No *Franks* Violation Shown

Engle also attacks White's affidavit as having been executed with a reckless disregard for the truth. While Engle points to matters developed on cross-examination in the suppression hearing, he has not established that affiant White was either untruthful or that she exhibited a reckless disregard for the truth in her affidavit.

In support of this allegation, Engle points to his questioning of White about her knowledge of Doe's background and veracity.

> Q     [By Engle's attorney] Y'all have absolutely no idea about her history, her truthfulness or lack thereof, correct?
>
> A     [By White] Correct.
>
> Q     She spins a tale for you and you fill out an affidavit for a search warrant, correct?
>
> A     Yes.

Engle then points to White's statement that she had only pursued three or four search warrants in her thirty-one-year career as a Greenville police officer (after eight years as a patrol officer, White said she had been a detective the past twenty-three years). Engle complains that Doe was a "transient person" not known to Greenville police and that the law enforcement officers did not corroborate the information Doe gave to them.

As with other probable cause issues, our review of a trial court's decision on a *Franks* issue is made pursuant to a dual standard: "We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor while we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor." *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). The trial court considers the affidavit in support of a search warrant and any evidence offered by the party seeking suppression, since that party has claimed the affidavit contains false statements. *State v. Verde*, 432 S.W.3d 475, 481 (Tex. App.—Texarkana 2014, pet. ref'd) (citing *Franks*, 438 U.S. at 155–56). "As the sole fact-finder and judge of the witnesses' credibility and weight of the evidence, the trial court is owed great deference, and its ruling will be overruled only if outside the bounds of reasonable disagreement." *Janecka v. State*, 937 S.W.2d 456, 462 (Tex. Crim. App. 1996) (per curiam).

First, the word "transient" in reference to Doe's status was employed by Engle. White's affidavit certainly provided the information that Doe and her friend resided outside Greenville and came there, spending their day visiting various people. At the hearing, Engle's trial attorney capably developed the fact that local law enforcement was not familiar with Doe and that she was likely from outside of Greenville. Drawing from that information, one might infer that Doe might be more difficult to locate or contact in the future than a permanent resident of the community. The affidavit also stated that Doe had been raped multiple times by a man known to Doe as "Mark" and that the motel room she identified as the site of some of that activity was rented by a man named Mark Engle. The fact that Doe was not a local resident was a factor which the issuer of the

10

search warrant could take into account in the totality of the circumstances to be considered in the trial court's determination of probable cause. We cannot say the trial court abused its discretion in finding the existence of probable cause for the issuance of the warrant.

Under examination by Engle, White agreed that many of Doe's statements could not be corroborated. The testimony at the suppression hearing to which Engle refers was as follows:

> Q      [By Engle's attorney] Okay. So none of the information in the first -- from page 2, 3, and down to that paragraph on page 4, none of that information that was provided was independently corroborated or verified; is that correct?

> A      [By White] Well, that's what the victim alleged also, yes.

> Q      Exactly. You -- the police were not able to corroborate anything that was said in those paragraphs?

> A      Well, later on, yes.

> Q      No, no, no, ma'am, I'm talking about: At the time that you filled out the search warrant, had the police made any effort to corroborate any of the allegations to determine whether or not they were being given true information by [Jane Doe] or did they just rely on what she said?

> A      Part of that is true, and then part of this says this is what Sergeant Walden verified.

> Q      All right. Well, let me get with you on that.

> A      Okay.

> Q      Sergeant Walden[7] verified that Mr. Engle was staying at the Motel 6; is that correct?

> A      That's correct.

> Q      And he verified the room number, correct?

---

[7]White's affidavit also said she spoke by telephone with Sergeant Steve Walden; she included facts learned by Walden in her affidavit.

11

A       Correct.

Q       And he verified the color and car that Mr. Engle was driving?

A       That's correct.

Q       And the fact that Mr. Engle was a white male with tattoos, correct?

A       I don't know about the tattoos; but yes, all that other, yes.

Q       Okay. That's all of what [Jane Doe] told the officers that Sergeant Walden was able to corroborate, correct?

A       Yes.

Q       That's information, is it not, that anybody could have come in that knew Mr. Engle or knew where he was staying could have provided to the police department, correct?

Rather than finding that the issuance of the search warrant was fatally flawed due to the lack of corroboration for Doe's allegations, we find the record supports a reasonable inference by the trial court that based on the sexual assaults Doe had described to police, law enforcement officers had corroborated what they could and then continued their investigation by seeking a warrant to search the room where the alleged assaults occurred. There is, however, a striking difference between a lack of corroboration and either a falsehood or reckless disregard for the truth.

More to the point, we find nothing in the record (and specifically nothing in the portions of the record to which Engle refers) to suggest that White's affidavit contained false information or that she recklessly disregarded the truth. We find no abuse of discretion in the trial court's denial of Engle's suppression motion.

12

We overrule Engle's point of error and affirm the trial court's judgment and sentence.


Bailey C. Moseley
Justice


Date Submitted:     October 27, 2015
Date Decided:       November 3, 2015

Do Not Publish



# Court of Appeals
# Sixth Appellate District of Texas

## J U D G M E N T

| | |
|---|---|
| Mark Eugene Engle, Appellant<br><br>No. 06-14-00239-CR    v.<br><br>The State of Texas, Appellee | Appeal from the 354th District Court of Hunt County, Texas (Tr. Ct. No. 29,110). Memorandum Opinion delivered by Justice Moseley, Chief Justice Morriss and Justice Burgess participating. |

As stated in the Court's opinion of this date, we find no error in the judgment of the court below. We affirm the judgment of the trial court.

We note that the appellant, Mark Eugene Engle, has adequately indicated his inability to pay costs of appeal. Therefore, we waive payment of costs.

RENDERED NOVEMBER 3, 2015
BY ORDER OF THE COURT
JOSH R. MORRISS, III
CHIEF JUSTICE

ATTEST:
Debra K. Autrey, Clerk